Submitted on briefs and record January 29, accused disbarred January 23, 1988

In re Complaint as to the Conduct of
# DONALD E. THIES,
*Accused.*

(OSB 840138, 85-6, 85-26, 86-55; SC S34518)

750 P2d 490

Donald L. Williams, Lake Oswego, filed the petition for review and brief for the Oregon State Bar.

No appearance for the Accused.

**PER CURIAM**

## PER CURIAM

The Oregon State Bar filed a complaint against Donald E. Thies accusing him of unethical conduct in eight separate causes. Seven of the causes arise directly or indirectly from Thies's representation of various people in three separate domestic relations matters between 1982 and 1984. The other cause arose from the alleged failure of Thies to respond to inquiries made by the General Counsel of the Bar concerning the settlement of a personal injury action.

Thies abandoned his law practice in Eugene early in 1985 and moved to California. On July 16, 1985, he was suspended from the practice of law in this state for the nonpayment of his 1985 Oregon State Bar membership dues.[1] On August 18, 1986, the Bar filed its formal complaint against Thies. On December 9, 1986, in Sonoma County, California, he accepted service of the complaint and notice to answer. Thies did not answer or resign from the Bar and on June 24, 1987, the Trial Panel entered an order of default pursuant to BR 5.8.[2]

On July 14, 1986, the Trial Panel held a hearing on the Bar's formal complaint. Thies did not appear at the hearing either in person or by counsel. The Trial Panel found Thies guilty on each of the eight causes and disbarred him from the practice of law in Oregon.

*De novo* review by this court is required. The relevant portions of ORS 9.536 provide:

"(2)  If the decision of the disciplinary board is to suspend the accused attorney from the practice of law for a period of longer than 60 days or to disbar the accused attorney, the

---

[1] *See In re Coe,* 302 Or 553, 731 P2d 1028 (1987), for a discussion of the Oregon State Bar's authority to bring a disciplinary proceeding against a lawyer who has been suspended for nonpayment of dues.

[2] "BR 5.8.   Default.

"If an accused fails to resign before his or her answer to a formal complaint is due or fails to answer a formal complaint within the time allowed by these rules, the trial panel shall enter an order in the record finding the accused in default under this rule. The trial panel shall thereafter proceed to a determination of the charge or charges filed against the accused based on the evidence presented by the Bar; and the accused shall not be entitled to further notice, except as may be required by these rules or by statute, in the disciplinary proceeding under consideration."

matter shall be reviewed by the Supreme Court. The procedure on review shall be as provided in the rules of procedure.

"(3) When a matter is before the Supreme Court for review, the court shall consider the matter de novo and may adopt, modify or reject the decision of the disciplinary board in whole or in part and thereupon enter an appropriate order."

Only the Bar has filed a brief in this court. The matter was submitted to us on the record without oral argument. We find Thies guilty of all eight causes of complaint and order that he be disbarred.

## FIRST CAUSE OF COMPLAINT

In this cause of complaint the Bar alleged that Thies violated the following disciplinary rules:

*Former* DR 1-102   Misconduct.

"(A)  A lawyer shall not:

"* * * * *

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

*Former* DR 6-101   Failing to Act Competently.

"A lawyer shall not:

"* * * * *

"(3)  Neglect a legal matter entrusted to him."

*Former* DR 7-101   Representing a Client Zealously.

"(A)  A lawyer shall not intentionally:

"* * * * *

"(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105."

On or about August 15, 1983, Arthur E. Louk, a resident of Sacramento, California, retained Thies to do the following things in connection with a divorce decree that had previously been entered in Lane County: (1) terminate child support payments for his 17 year-old son who had enrolled in the Job Corp; (2) lift a court order which required Louk's employer to withhold money for the son's support from Louk's salary; (3) obtain reimbursement of the child support which

Louk had previously paid since the son had entered the Job Corp; and (4) recover from Louk's ex-wife the sum of $4,500 which she owed him as a result of the original decree.

Thies accepted a $150 retainer fee from Louk and represented to him that he could get the court order lifted immediately and obtain a modification of the divorce decree by Christmas 1983.

In mid-October 1983, when Louk had not heard anything about the status of his problems, he attempted to call Thies on a regular basis. Thies was difficult to contact and when contacted gave Louk a series of excuses. These excuses included a number of falsehoods—there were affidavits in the mail, it was difficult to serve Louk's ex-wife, Thies had personally served the ex-wife with modification papers, the court had set a hearing date, and court had cancelled the hearing date, and Thies was going to meet with the ex-wife in person to resolve the problems.

On March 14, 1984, Louk travelled to Eugene and met with Thies. At that time Louk informed Thies that the Support Services Division had obtained a court order requiring Louk to pay child support until the son reached 21 years of age on the theory that the Job Corp was continuing education. Thies was unable to produce any files or documents relating to the matters he was handling for Louk. At that meeting Louk requested that Thies drop the plans to have the child support terminated as of the date that the son entered the Job Corp and attempt to have the payments terminate as of the son's 18th birthday. This Thies agreed to do.

After Louk returned to California he attempted to contact Thies several times without success. Finally on April 13, 1984, Thies represented to Louk in a telephone conversation that he had mailed a letter that would explain everything that Thies had done to that date. The letter was never received. Louk discharged Thies and filed a complaint with the Bar. After the complaint had been filed Thies refunded the $150 retainer fee.

It is clear that Thies neglected a legal matter entrusted to him and failed to carry out his contract of employment in violation of *former* DR 6-101(A)(3) and *former*

DR 7-101(A)(2). Then to compound the problem, he "continued to pile one dishonesty upon another in order to hide his failure and neglect * * * and to keep his inaction a secret from his client."[3] Therefore Thies violated *former* DR 1-102(A)(4). *See In re Hockett,* 303 Or 150, 158-59, 734 P2d 877 (1987).

We find by clear and convincing evidence that Thies violated *former* DR 1-102(A)(4), DR 6-101(A)(3), and DR 7-101(A)(2) in the first cause of complaint.

*SECOND AND THIRD CAUSES OF COMPLAINT*

In these causes of complaint the bar alleged that Thies violated *former* DR 1-102(A)(4), DR 6-101(A)(3), DR 7-101(A)(2), and

"*Former* DR 7-101 Representing a Client Zealously.

"(A) A lawyer shall not intentionally:

"* * * * *

"(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B)."

On October 12, 1982, Thies was substituted as the attorney of record in a case in Lane County wherein Marilyn K. Baumgartner was seeking to dissolve her marriage with Timothy G. Baumgartner. On September 2, 1983, and again on July 23, 1984, the trial court sent notices to Thies informing him that the dissolution case would be dismissed for want of prosecution unless a Motion for a Continuance or other appropriate action was taken within 30 days. Thies never filed any pleading or other document in response to the notices.

On August 18, 1984, Thies met with both of the Baumgartners in his office. He represented to them that he had to start the dissolution proceeding all over again. He presented them with papers to sign. They both signed. Timothy G. Baumgartner paid Thies $100 by personal check. The papers were never filed and the $100 was not refunded. On August 28, 1984, the original dissolution proceeding was dismissed by the Lane County Circuit Court. Mrs. Baumgartner was forced to hire another lawyer to have her marriage dissolved.

---

[3] This language is borrowed from the Trial Panel's Order and Disposition.

Disregarding two notices from the trial court and allowing the case to be dismissed for lack of prosecution is clear and convincing evidence that Thies neglected a matter entrusted to him and failed to carry out a contract of employment in violation of *former* DR 6-101(A)(3) and *former* DR 7-101(A)(2). Allowing the dissolution action to pend for a period of one year and ten months without taking any action to resolve it resulting in additional expense to his client is clear and convincing evidence that Thies prejudiced his client in violation of *former* DR 7-101(A)(3).

"Trustworthiness is the essential principle embodied in [*former*] DR 1-102(A)(4)." *In re Hiller,* 298 Or 526, 534, 694 P2d 540 (1985). We find by clear and convincing evidence that Thies's acts of falsely telling the Baumgartners that the dissolution case had to be refiled and charging $100 for that purpose were dishonest acts in violation of that rule.

## FOURTH CAUSE OF COMPLAINT

In this cause of complaint the Bar alleged that Thies violated *former* DR 6-101(A)(3) and

"[*Former*] DR 5-105 Refusing to Accept or Continue Employment if the Interest of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of his client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B) A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C)."[4]

In November 1984 Thies agreed to represent Lou

---

[4] *Former* DR 5-105(C) is as follows:

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after a full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

Ann Kelly and Earl Blake Kelly as co-petitioners in the dissolution of their marriage for the sum of $500. The fee was paid from the parties' joint checking account. The parties had been married for 21 years and Earl Blake Kelly was qualified to participate in an established pension fund. Thies failed to notify the wife that her husband's pension fund might be a marital asset. He also failed to advise either party that there was a conflict of interest between them and that one or both of them should obtain independent counsel.

Thies never filed the petition for dissolution. He left the State of Oregon and moved to California without telling the Kellys. The $500 fee was never refunded. Not filing the dissolution petition and keeping the $500 retainer fee is clear and convincing evidence that Thies did "neglect a legal matter entrusted to him" in violation of *former* DR 6-101(A)(3).

Recently, in the case of *In re Griffith*, 304 Or 575, 616, 748 P2d 86 (1987), this court held:

> "*Former* DR 5-105(A) and *former* DR 5-105(B) are designed to cover different situations. *Former* DR 5-105(A) provides that the lawyer shall refuse to accept employment when there is a conflict of interest. *Former* DR 5-105(B) provides that the lawyer shall discontinue his employment when a conflict of interest develops."

In the context of this case Thies cannot be guilty of violating both *former* DR 5-105(A) and *former* DR 5-105(B). The evidence is clear and convincing that a conflict of interest existed between the parties at the time Thies accepted the employment to prepare and file a co-petition. Therefore he is guilty of violating *former* DR 5-105(A). The conflict of interest did not develop after the employment had been accepted. Thies is not guilty of violating *former* DR 5-105(B).

### FIFTH, SIXTH, SEVENTH AND EIGHTH CAUSES OF COMPLAINT

In each of these causes the Bar alleged that Thies violated:

> "[*Former*] DR 1-103 Disclosure of Information to Authorities.
>
> "* * * * *
>
> "(C) A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and

comply with reasonable requests of the general counsel, the local professional responsibility committees, the state professional responsibility board, and the board of governors as requested, subject only to the exercise of any applicable right or privilege."

The fifth cause alleges that Thies failed to fully respond to inquiries by the Bar and the local professional responsibility committee in regard to the complaints by Arthur E. Louk.

The sixth cause alleges that Thies represented Jeffrey Becraft in a personal injury action which resulted in a settlement with the other party's insurance company. Becraft was dissatisfied and contacted the Oregon State Bar. Its General Counsel wrote to Thies two different times. Thies did not respond.[5]

The seventh and eighth causes allege that Thies failed to respond to inquiries by the Bar counsel in regard to the Baumgartner and Kelly complaints.

The evidence is uncontradicted that in these four causes Thies only responded to one inquiry by the Bar. That was in the Louk matter. We agree with the Trial Panel that Thies's answer "did not respond directly to the complaints of Louk and only cursorily responded to the Bar counsel's request." Thereafter Thies failed to respond in any manner to two letters by the local professional responsibility committee asking him about the same matter. The evidence is also uncontradicted that Thies failed to reply to the inquiries by the Bar and the local committees in the Becraft, Baumgartner and Kelly matters.

We find by clear and convincing evidence that Thies is guilty of the fifth, sixth, seventh and eighth causes.

## SANCTION

We agree with the manner in which the Trial Panel approached the sanction question. We also agree with its observations and conclusions. Its opinion in part states:

"The Trial Panel considered the duties violated by the

---

[5] Apparently Becraft's informal complaint did not result in a formal complaint being filed against Thies.

Accused, the Accused's mental state at the time of the violations, the injuries and damages caused to his clients by his violations and the existence of any aggravating or mitigating factors in arriving at the sanction of disbarment. *In re Bristow,* 301 Or 194, 206, 721 P2d 437 (1986). There was no evidence of any mitigating factors for the Panel to consider. The aggravating factors included the Accused's failure to respond or cooperate with the Bar or the local public responsibility committee. In addition, he failed to answer or respond to the Formal Complaint filed by the Oregon State Bar. And finally, he failed to appear, or give reason for his not appearing, at the hearing before the Trial Panel. The Accused simply and plainly ignored the Bar and refused to participate in the disciplinary proceedings. Another aggravating factor is the Accused's failure to return fees and costs that he had taken from clients (Baumgartner and Kelly) when he knew he had not carried out the work he represented he would do. *In re Kellner,* 197 Or 329, 683 P2d 89 (1984)."

In recent disciplinary cases this court has considered the American Bar Association's Model Standards for Imposing Lawyer Sanctions. *In re Griffith, supra,* 304 Or 635; *In re Howard,* 304 Or 193, 213, 743 P2d 719 (1987).

The following American Bar Association standard is relevant to this proceedings:

"4.41  Disbarment is generally appropriate when:

"(a)  a lawyer abandons the practice and causes serious or potential serious injury to a client; or

"(b)  a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

"(c)  a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client."

The above standard is written in the disjunctive. It states that disbarment is appropriate if a lawyer is guilty of violating any one of its three parts. Here Thies violated all three.

Thies (1) abandoned his practice and moved to California, (2) knowingly failed to perform services, and (3) engaged in a pattern of neglect, all of which caused serious injury to Louk, the Baumgartners and the Kellys.

Thies is disbarred from the practice of law in Oregon. The Oregon State Bar shall have judgment against him for its actual and necessary costs and disbursements incurred herein. ORS 9.536(4).