Submitted on the record and brief September 11, 1998, accused suspended for one year, with the period to run consecutively to the period of suspension imposed January 22, 1999, in *In re Meyer (I)* (328 Or 211, 970 P2d 652)

## In re Complaint as to the Conduct of

# JOHN G. MEYER,
*Accused.*

## (OSB 96-82; SC S43286)

970 P2d 647

Mary A. Cooper, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, filed a brief on behalf of the Oregon State Bar.

No appearance *contra*.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Durham, Kulongoski, and Leeson, Justices.[*]

PER CURIAM

---

[*] Riggs, J., did not participate in the consideration or decision of this case.

## PER CURIAM

The issue in this disciplinary case is whether the accused violated DR 6-101(B) (neglect of a legal matter entrusted to a lawyer) in his representation of a client. A trial panel found that the accused did not violate that disciplinary rule, and the Oregon State Bar (the Bar) timely petitioned for review. Bar Rules of Procedure (BR) 10.1. This court has jurisdiction pursuant to ORS 9.536(1), BR 10.1, and BR 10.3. We review *de novo*. ORS 9.536(3); BR 10.6. The Bar has the burden of proving misconduct by clear and convincing evidence. ORS 9.536(2); BR 5.2.

On review, we find that the accused violated DR 6-101(B). As the sanction for that misconduct, we suspend the accused from the practice of law for one year. That suspension shall run consecutively to the 90-day suspension imposed on the accused in *In re Meyer (I)*, 328 Or 211, 970 P2d 652 (1999) (*Meyer I*).

We make the following findings of fact. On December 9, 1995, Edward Cheuvront received a summons and a copy of his wife's petition for dissolution of marriage. On December 13, 1995, Mrs. Cheuvront filed a motion for *pendente lite* support. On December 28, 1995, Mr. Cheuvront received service of an order to show cause why Mrs. Cheuvront should not receive the requested *pendente lite* support, a motion for *pendente lite* order, and a Uniform Support Affidavit that was to be filed with the court no later than January 8, 1996. On or before January 3, 1996, Mr. Cheuvront retained the accused for a sum of $500. On January 3, 1996, Mr. Cheuvront completed the Uniform Support Affidavit before a notary and left it with the accused.

The *pendente lite* relief requested by Mrs. Cheuvront consisted of temporary spousal and child support and a one-time contribution to Mrs. Cheuvront's attorney fees. When he retained the accused, Mr. Cheuvront emphasized that his primary and most immediate concern was his wife's request for temporary support, because he believed that the amount requested threatened to overwhelm his income.

Mr. Cheuvront also told the accused that he had been contacted by the Oregon Department of Justice Support

Enforcement Division (SED) concerning the support claimed by Mrs. Cheuvront, and that a hearing was scheduled for January 9, 1996, to resolve the contested income figures claimed by Mrs. Cheuvront. The accused assured Mr. Cheuvront that he would take care of the temporary support matter.

The accused failed to file the Uniform Support Affidavit completed by Mr. Cheuvront. The accused also failed to respond to the show cause order. The accused canceled the January 9, 1996, SED hearing concerning the SED's proposed child support order. The accused assured Mr. Cheuvront that that hearing was unnecessary, because the accused would resolve the support issues through negotiations with Mrs. Cheuvront's lawyer.

On January 12, 1996, Mrs. Cheuvront filed with the court a proposed *pendente lite* order. The accused failed to respond in any way to that proposed order. Under local court rules, and as indicated on the face of the order itself, the requested *pendente lite* relief went into effect 10 days after the service of the show cause order, which Mr. Cheuvront had received on December 28, 1995. On January 16, 1996, the court signed the *pendente light* order, requiring that Mr. Cheuvront pay $1,000 in attorney fees and court costs, and monthly child and spousal support of $1,509.

A meeting was scheduled on January 22, 1996, between Mr. and Mrs. Cheuvront and their respective lawyers to attempt to settle the entire dissolution matter. The accused failed to bring Mr. Cheuvront's completed Uniform Support Affidavit and other documentation of Mr. Cheuvront's income to that meeting. At least in part because of the accused's failure to bring the necessary financial information, that meeting concluded without result.

After that meeting, the accused promised to provide Mr. Cheuvront's completed Uniform Support Affidavit and other financial documentation to Mrs. Cheuvront's lawyer. The accused failed to do so. On January 31, 1996, Mr. Cheuvront wrote to the accused, reminding him to send the completed Uniform Support Affidavit and financial documentation to Mrs. Cheuvront's lawyer. That letter from Mr. Cheuvront also advised the accused that the *pendente lite* order

required Mr. Cheuvront to begin making temporary support payments and that, if Mr. Cheuvront did not pay, then Mrs. Cheuvront's lawyer intended to initiate contempt proceedings against Mr. Cheuvront. The accused did not respond to that letter, nor did he send the financial information to Mrs. Cheuvront's lawyer.

Mrs. Cheuvront mailed to the court on February 24, 1996, a motion to amend the January 16, 1996, *pendente lite* order, because the original *pendente lite* order did not contain a commencement date. The accused also failed to respond to that motion. The court granted the motion to amend the *pendente lite* order on March 4, 1996, and ordered temporary support payments to commence immediately.

The accused failed to keep his client informed regarding temporary support issues, including the fact that Mr. Cheuvront was in default on both the original and the amended *pendente lite* orders. Mr. Cheuvront telephoned the accused on numerous occasions, and the accused repeatedly assured him that everything was fine.

Mr. Cheuvront's wages were garnished on March 9, 1996, to pay the temporary support and attorney fees as ordered in the amended *pendente lite* order. After receiving the garnishment papers, Mr. Cheuvront confronted the accused and terminated his representation. Mr. Cheuvront hired a new lawyer to represent him in the dissolution proceeding. Mr. Cheuvront later declared bankruptcy, alleging that, in order to pay the temporary support obligations required by the *pendente lite* order, he was unable to meet his other financial obligations.[1]

■ ■ We now turn to the disciplinary rule violations alleged by the Bar. DR 6-101(B) provides that "[a] lawyer shall not neglect a legal matter entrusted to the lawyer." *See In re Bourcier*, 322 Or 561, 566, 909 P2d 1234 (1996) (discussing that disciplinary rule). A lawyer's failure to take action, after being retained by a client for legal services, constitutes neglect. *See, e.g., In re Biggs*, 318 Or 281, 294, 864 P2d 1310

---

[1] From the record in this case, we are unable to make a factual determination that the accused's neglect of the legal matter entrusted to him by Mr. Cheuvront was the sole reason for the filing of the bankruptcy petition.

(1994) (so stating). In order to establish a violation of DR 6-101(B), the Bar need prove only a course of negligent conduct. *Bourcier*, 322 Or at 567.

■ The trial panel made findings of fact similar to this court's regarding the accused's repeated neglect of the legal matters entrusted to him by Mr. Cheuvront. Nevertheless, the trial panel concluded that the accused did not violate DR 6-101(B), because his failures constituted an "isolated instance of neglect rather than a pattern of neglect." On review, the Bar asserts that, even though the accused's course of conduct lasted only two months, and even though he did render some services during that period, the accused violated DR 6-101(B), because he took no constructive action to advance or to protect Mr. Cheuvront's legal position, especially as to the issue of temporary spousal and child support, which was Mr. Cheuvront's primary concern. We agree.

It is well established that a pattern of conduct such as that exhibited by the accused constitutes neglect of a legal matter entrusted to a lawyer. In *In re Thies*, 305 Or 104, 750 P2d 490 (1988), for example, the accused lawyer accepted a retainer in a domestic relations matter and promised to perform specific tasks relating to the client's child-support obligations. Over the next few months, he did nothing to accomplish those tasks, other than to give his client false assurances over the telephone. This court held that the lawyer neglected a legal matter entrusted to him, in violation of *former* DR 6-101(A)(3) ("A lawyer shall not * * * [n]eglect a legal matter entrusted to him."). 305 Or at 107-09.

In *In re Phelps*, 306 Or 508, 760 P2d 1331 (1988), the accused lawyer represented the sellers in a real estate transaction. The parties agreed to prorate the property taxes, and the sellers assigned to the lawyer the task of paying their share of those taxes out of the sale proceeds. However, the lawyer repeatedly failed to pay the property taxes, even after being reminded to do so by the sellers. The lawyer did not make the tax payment until the sellers filed a Bar complaint against him. This court held that a lawyer who repeatedly failed to perform tasks with which the lawyer had been specifically charged was guilty of neglect of a legal matter entrusted to the lawyer, in violation of DR 6-101(B). 306 Or

at 510-12. For similar reasons, we find that the accused violated DR 6-101(B).

█ █ Because we find that the accused violated DR 6-101(B), we must impose an appropriate sanction. This court refers to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) for guidance in determining the appropriate sanction for lawyer misconduct. *In re Schaffner*, 323 Or 472, 918 P2d 803 (1996) (*Schaffner I*). We agree with the statement in the ABA Standards that:

> "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA Standards at 1.1.

In *In re Carstens*, 297 Or 155, 166, 683 P2d 992 (1984), this court stated:

> "Proceedings for the discipline of an attorney are not to punish the attorney for the commission of a crime. That matter is left to the criminal courts. The objects of the proceedings here are to uphold the dignity and respect of the profession, protect the courts, preserve the administration of justice and protect clients."

The ABA Standards establish an analytical framework for determining the appropriate sanction in lawyer disciplinary cases, using three factors: (1) the duty violated; (2) the accused lawyer's mental state; and (3) the actual or potential injury caused by the accused lawyer's misconduct. ABA Standard 3.0. This court examines each of those factors and makes an initial determination of the appropriate sanction. *See* ABA Standards at 5-6 (explaining analytical framework). If mitigating or aggravating circumstances are present, the court considers those as a fourth factor and determines whether the sanction should be adjusted (*i.e.,* increased or decreased). *Id.* at 6; ABA Standard 3.0. In determining the correct sanction, the court also examines the conduct of the accused in light of the court's prior case law. *In re Garvey*, 325 Or 34, 44, 932 P2d 549 (1997).

█ The accused violated his duty to his client to act with reasonable diligence and promptness. ABA Standard 4.4. We conclude that the accused acted "knowingly," defined as a conscious awareness of the nature or attendant circumstances of the conduct, but without a conscious objective or purpose to accomplish a particular result. ABA Standards at 7. The accused's client suffered actual injury because the client, as a result of the accused's neglect, was not able to contest Mrs. Cheuvront's request for temporary support.

Drawing together the factors of the duty violated, the accused's mental state, and the actual injury caused, we make an initial determination of the appropriate sanction. ABA Standards 4.41 and 4.42, respectively, provide:

"Disbarment is generally appropriate when * * * (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client."

"Suspension is generally appropriate when (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client."

We find this case to be closest on its facts to the circumstances described in Standard 4.42. Initially, we conclude that suspension is the appropriate sanction in this case. We now turn to the fourth factor in our analysis, aggravating and mitigating circumstances.

█ Several aggravating circumstances are present here. First, the accused has committed prior disciplinary offenses. ABA Standard 9.22(a). The "prior offenses" aggravating factor "refers to offenses that have been adjudicated prior to imposition of the sanction in the current case." *In re Jones*, 326 Or 195, 200, 951 P2d 149 (1997). When applying that factor to a particular case, the following considerations, at a minimum, play an important role in the court's analysis: (1) the relative seriousness of the prior offense and resulting sanction; (2) the similarity of the prior offense to the offense

in the case at bar; (3) the number of prior offenses; (4) the relative recency of the prior offense; and (5) the timing of the current offense in relation to the prior offense and resulting sanction, specifically, whether the accused lawyer had been sanctioned for the prior offense before engaging in the offense in the case at bar. *Id.* These considerations can heighten or diminish the significance of the earlier misconduct. *Id.*

In 1990, the accused was publicly reprimanded for neglecting a legal matter and improperly withdrawing from representation of a client. Because a public reprimand was imposed as sanction for that misconduct, we conclude that those 1990 violations were less serious than the misconduct at issue here. Although less serious, we note that the 1990 misconduct was similar to the misconduct at issue here, because the accused neglected a legal matter, the same duty violated by the accused in this case. That 1990 public reprimand was imposed approximately six years before the misconduct at issue here. The 1990 reprimand demonstrates that the accused had "both warning and knowledge of the disciplinary process" when he engaged in the later misconduct. *In re Hereford*, 306 Or 69, 75, 756 P2d 30 (1988) (internal quotation marks omitted).

This court held today that other, earlier misconduct by the accused violated DR 1-102(A)(4) (conduct prejudicial to the administration of justice) and DR 7-106(C)(6) (undignified and discourteous conduct degrading to a tribunal). *Meyer (I)*, 328 Or at 213. The court found appropriate the 90-day suspension imposed as sanction for that misconduct. *Id.* That misconduct is dissimilar to the misconduct at issue here, but it is as serious in nature. We note that the 90-day suspension imposed as sanction in *Meyer I* was not imposed until after the accused committed the misconduct at issue here. That fact eliminates the significance, as an aggravating factor, of the disciplinary offenses at issue in *Meyer I*, because the accused had no opportunity to adapt his conduct in this case in response to the sanction imposed for those offenses. *Jones*, 326 Or at 201. In view of these considerations, the disciplinary offenses at issue in *Meyer I*, considered alone, carry no weight in aggravation.

The accused's prior disciplinary offenses, taken together, carry significant weight in aggravation, because the presence of three prior disciplinary rule violations resulting in two separate sanctions demonstrates that the accused is careless with respect to his ethical obligations. *Jones*, 326 Or at 201.

Additional aggravating factors are present here. The accused has substantial experience in the practice of law, having been admitted to practice in Oregon in 1967. ABA Standard 9.22(i). The accused also refuses to acknowledge the wrongful nature of his conduct. ABA Standard 9.22(g).

The accused has presented no mitigating circumstances, and we find none. We now turn to consideration of this court's prior case law.

In *Schaffner I*, 323 Or at 477, 481, the accused lawyer was found guilty of neglect and noncooperation, and was suspended for 120 days. A later complaint against that same lawyer resulted in findings of the same disciplinary violations and imposition of a two-year suspension. *In re Schaffner*, 325 Or 421, 428, 939 P2d 39 (1997) (*Schaffner II*). *See also Bourcier*, 322 Or at 561 (accused lawyer was suspended for three years after second violation, among other violations, of DR 6-101(B)). Because we are not confronted here with noncooperation by the accused, and because we are not confronted in this case with multiple disciplinary violations, it is not appropriate here to impose a sanction as severe as those imposed in *Schaffner II* and *Bourcier*. Based on our factual findings, the ABA Standards, and this court's case law, we conclude that the accused should be suspended from the practice of law for one year. That suspension shall run consecutively to the 90-day suspension imposed on the accused as sanction in *Meyer I*.

The accused is suspended from the practice of law for a period of one year, with the period of suspension to run consecutively to the period of suspension imposed on the accused in *In re Meyer (I)*, 328 Or 211, 970 P2d 652 (1999) (*Meyer I*).