Submitted on the record October 10, accused suspended from practice of law for 120 days, effective 60 days from date of filing of this decision December 11, 2008, petition for reconsideration denied February 11, 2009

In re Complaint as to the Conduct of

## JACQUELINE L. KOCH,
*Accused.*

(OSB 06-116, 06-117; SC S055631)

198 P3d 910

Jane E. Angus, Assistant Disciplinary Counsel, Oregon State Bar, Tigard, filed the brief for the Oregon State Bar.

No appearance by the accused.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar alleged that, in the course of representing two clients, the accused violated Rule of Professional Conduct (RPC) 1.3 (neglect of a client matter); RPC 1.4(a) (failure to keep clients reasonably informed and to respond promptly to reasonable requests for information) (two counts); RPC 1.4(b) (failure to explain matters sufficiently to permit the client to make informed legal decisions); RPC 1.15-1(d) and Code of Professional Responsibility Disciplinary Rule (DR) 9-101(C)(3)[1] (failure to account for client funds and return funds when due) (four counts); RPC 1.16(d) (withdrawing from representation without taking steps to protect the client); and RPC 8.1(a)(2) (failure to comply with demands from the Bar during a disciplinary proceeding) (four counts). We find that the accused did not violate RPC 1.4(b), RPC 1.16(d), and RPC 1.15-1(d) regarding one of her clients. We find that she committed the remainder of the charged violations and suspend her for 120 days from the practice of law.

This case arises in an unusual posture. The Bar entered a default order against the accused because she did not answer the Bar's complaint. As a result of her default, the allegations in the complaint were deemed true. *See* Bar Rule (BR) 5.8(a); *In re Magar*, 337 Or 548, 551-53, 100 P3d 727 (2004). After the default order was entered, the Bar asked that a trial panel be appointed to determine the appropriate sanction. The Bar introduced documentary evidence at the hearing. The accused appeared at the beginning of the hearing. She made a short statement that she was sorry that her personal life had interfered with her practice and then left the room in tears.

After considering the evidence at the hearing, the trial panel did not determine whether the accused had committed the charged ethical violations. Rather, the trial panel appears to have assumed that the accused committed all the charged violations and limited its decision to determining the appropriate sanction. The panel suspended the accused from

---

[1] Oregon's Rules of Professional Conduct became effective January 1, 2005. Because some of the accused's conduct occurred before that date, the Code of Professional Responsibility applies to that conduct.

the practice of law for five months but stayed the suspension pending her completion of a year's probation. The Bar has petitioned for review of the trial panel's decision. It argues that the trial panel should have imposed a one-year suspension with no probation.

■ Before turning to the Bar's arguments, we note that, at the Bar's urging, the trial panel appears to have reached the question of sanctions without ever determining whether the accused had committed the charged violations. The fact, however, that the factual allegations in the complaint are deemed true as a result of the accused's default does not mean that those facts necessarily establish the charged violations by clear and convincing evidence; rather, the trial panel still has to make that finding. *See In re Kluge*, 332 Or 251, 253, 27 P3d 102 (2001) (describing that two-step process). Only after finding that an ethical violation has occurred may the trial panel determine the appropriate sanction.

■ Although the trial panel did not make all the necessary findings in this case, we need not remand the case to the trial panel. This court reviews the facts in bar disciplinary proceedings *de novo. In re Fitzhenry*, 343 Or 86, 88, 162 P3d 260 (2007). Although we give deference to a trial panel's express credibility findings based on the panel's observation of the witnesses' demeanor and manner of testifying, *id.* at 103, no witness testified in this case regarding the charged violations. Rather, the record on that issue consists solely of the complaint and the exhibits submitted by the Bar. It follows that we may determine on *de novo* review whether the Bar proved the charged violations by clear and convincing evidence before turning to whether the trial panel imposed an appropriate sanction. We first discuss the charges that arise from the accused's handling of Mark Dolbeer's dissolution proceeding and then turn to the charges that arise from her handling of Beth Anne Mahler's dissolution proceeding.

We take the facts from the allegations in the complaint, which are deemed true as a result of the accused's default, and from the documents that the Bar submitted to the trial panel. Dolbeer retained the accused in June 2003 to represent him in a dissolution proceeding, and he paid her a $1,500 retainer. The accused worked on Dolbeer's case over

the next few months, and the accused notified Dolbeer of the entry of judgment in the dissolution proceeding in January 2004. After the judgment was entered, the accused did additional work regarding Dolbeer's dissolution proceeding in August and September 2004.

Beginning in December 2003, shortly before the judgment was entered, Dolbeer "called [the accused] on numerous occasions * * * to find out about refunding the rest of [his] retainer and to have a statement sent with billed hours." In May 2005, the accused prepared a statement of services,[2] and her office wrote a check to Dolbeer for $397, the unearned balance of his retainer. It is not clear whether the accused's office failed to put the check and the statement of services in the mail or whether those documents were lost in the mail. In any event, Dolbeer did not receive either the statement of services or the refund check.

On February 27, 2006, Dolbeer called the accused and asked about the balance of his retainer. The accused said that she had sent him a check in May 2005 and was surprised that he had not received it. "She assured [him] that she was extremely embarrassed and promised to get the check to [him] right away." When Dolbeer had not received the check by March 24, 2006, he filed a complaint with the Bar, and the Bar asked the accused for a response four days later.

The accused sent Dolbeer a check for $397 in April 2006 and sent the Bar a written response to Dolbeer's complaint on May 22, 2006. The accused acknowledged that Dolbeer had tried to contact her between December 2003 and February 2006. She said that they had spoken "intermittently between December 2003 and May 2005," that their conversations concerned whether the case was over, and that her office had cut Dolbeer a check in May 2005 for the unearned balance of his retainer. The accused explained that she had not heard from Dolbeer until February 2006, when he called to say that he had not received a refund. The accused acknowledged that, after receiving Dolbeer's February 2006 call, she had not issued him a refund check immediately. She explained that, because she "had been very

---

[2] The previous statement of services is dated October 2003.

ill and then learned that [her] mother was hospitalized," she had not followed up as quickly as she should have. The accused also provided time sheets, billing statements, and other records to support her explanation.

The Bar did not pursue the matter further until September 14, 2006. At that time, the disciplinary counsel for the Bar wrote the accused asking for additional information to verify her earlier explanation. When the accused did not respond to that letter, the disciplinary counsel sent her two letters during October 2006 reminding her that she had not responded. When the accused still failed to respond, the Bar turned the matter over to the Local Professional Responsibility Committee (LPRC). Twice during November, a lawyer for the LPRC called the accused but got no response. On February 6, 2007, the LPRC issued a subpoena to the accused. The accused met with the lawyer for the LPRC on February 13 and brought Dolbeer's files with her. At that meeting, the lawyer asked for additional documentation and responses to questions concerning Dolbeer. The accused said that she would provide that information but did not do so.

■ The Bar contends initially that the accused's failure to send Dolbeer an accounting violated three rules: (1) RPC 1.4(a), which provides that a "lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information"; (2) RPC 1.15-1(d), which provides in part that a lawyer, "upon request by the client * * * shall promptly render a full accounting regarding [client] property" held in trust; and (3) DR 9-101(C)(3), which provides that a lawyer shall "render appropriate accounts to the lawyer's client regarding [the client's funds]" in the lawyer's possession.[3] We agree that the accused violated those rules when she failed, despite Dolbeer's requests, to provide him with an accounting of his funds from October 2003 to May 2005. We also find that the violations were knowing: Dolbeer's repeated requests put the accused on notice that she had failed to account for the funds that she held in trust for him. *See* American Bar Association's

---

[3] As noted, DR 9-101(C)(3) applies to the accused's conduct that occurred before the Rules of Professional Conduct went into effect on January 1, 2005.

*Standards for Imposing Lawyer Sanctions* 7 (1991) (amended 1992) (ABA Standards) (defining knowledge).

■　　The Bar next contends that the accused's failure to promptly return the balance of Dolbeer's retainer violated RPC 1.15-1(d), which provides that, with certain exceptions, "a lawyer shall promptly deliver to the client * * * any funds or other property that the client * * * is entitled to receive." In its complaint, the Bar alleged that the "[a]ccused continued to hold the unearned balance of the [r]etainer after the [a]ccused concluded the representation."[4] Taking that allegation as true, as we must as a result of the accused's default, we agree with the Bar that the accused violated RPC 1.15-1(d). We also find that the accused acted knowingly, at least for the period after February 27, 2006. At that point, she knew that Dolbeer had not received the May 2005 refund check, but she did not send Dolbeer a replacement check until April 2006, after Dolbeer had complained to the Bar and after the Bar had asked the accused for a response to Dolbeer's complaint.

■　　Finally, the Bar contends that the accused violated RPC 8.1(a)(2), which provides in part that a lawyer, "in connection with a disciplinary matter, shall not * * * knowingly fail to respond to a lawful demand for information from [a] * * * disciplinary authority." The Bar argues, and we find, that the accused violated that rule twice. She violated it when she knowingly failed to respond to the disciplinary counsel's September 14 letter[5] and again when she knowingly failed to respond to the LPRC's request for information.

Having considered the charges regarding Dolbeer, we turn to the accused's handling of Mahler's dissolution proceeding. The accused agreed to represent Mahler in April 2004. Mahler's divorce became final in October 2004, and Mahler was pleased with the accused's work. All that

---

[4] As noted, the last work that the accused performed for Dolbeer occurred in September 2004. She did not attempt to mail a refund check to him until May 2005, and Dolbeer did not receive a refund check until April 2006.

[5] The complaint alleges that the accused violated RPC 8.1(a)(2) when she failed to respond to the disciplinary counsel's September 14 letter. It does not allege that the accused's failure to respond to the two letters that the disciplinary counsel sent in October constituted additional violations of RPC 8.1(a)(2).

remained to be done was to prepare a qualified domestic relations order (QDRO) to divide a 401(k) account. The accused told Mahler that she would continue to represent her until the QDRO was completed. In February 2005, the accused and the lawyer for Mahler's husband agreed that their clients should hire another lawyer, Dan Ricks, to prepare the QDRO. The accused, however, did not communicate that information to Mahler until August 2005, when Mahler called the accused and told her that she was coming back to Portland for a visit.[6]

In August 2005, Mahler and her former husband met with Ricks, who determined that there was a problem with the judgment. From August 2005 to May 2006, Mahler and Ricks tried repeatedly and unsuccessfully to get in touch with the accused both to get information and to get her assistance in correcting the dissolution judgment. On May 1, 2006, Mahler filed a complaint with the Bar. The accused responded to Mahler's complaint on August 9, 2006. In her response, she stated that Mahler had moved, making "communication somewhat more difficult than it had previously been." She said that she had told Mahler that Mahler needed to hire another lawyer to prepare the QDRO and, in early February of 2005, agreed with the lawyer for Mahler's husband to have their clients hire Ricks to prepare the QDRO.

The accused explained that, although she ordinarily has nothing to do with preparing a QDRO, "there were some questions early on [in this case], and [she] talked to attorney Ricks and the client about information that was requested." She stated that, although she believed that Ricks had the necessary information, it turned out later that there was a problem with the judgment, and she spoke with Ricks and the lawyer for Mahler's former husband to see what was needed to fix the problem. According to the accused, when the issues regarding the judgment arose, she attempted to contact Mahler by telephone but was unable to do so. The accused added:

"I have had some personal problems that have caused me to be distracted and I have also explained this to Ms. Mahler.

---

[6] Mahler had moved in the interim.

I believe that I have recovered from dealing with them and that I will be able to provide proper service at this time."

On September 1, 2006, the disciplinary counsel for the Bar wrote the accused, noting that both Mahler and Ricks had a different memory of the events.[7] The disciplinary counsel asked the accused a series of specific questions to help the Bar sort out that factual disagreement. When the accused did not respond to that letter, the Bar wrote her two times during October 2006 reminding her that she had not responded. When the accused failed to respond to those letters, the Bar also turned Mahler's complaint over to the LPRC.[8] As noted, on February 6, 2007, the LRPC issued a subpoena to the accused. The accused met with the lawyer for the LRPC on February 13 and gave the lawyer copies of Mahler's file. As a result of that meeting, the lawyer asked for additional information, which the accused did not provide.

Based on that conduct, the Bar contends that the accused violated six ethical rules. As explained below, we find that the accused violated three of those rules but did not violate the remaining three rules.

■ We begin with the Bar's argument that the accused violated RPC 1.3, which provides that a "lawyer shall not neglect a legal matter entrusted to the lawyer." We find that the accused violated this rule when she failed, from February to August 2005, to tell Mahler that she needed to contact Ricks to prepare a QDRO and again when she failed, after August 2005, to respond to Ricks and Mahler's questions and to help them correct the judgment. *See In re Knappenberger*, 340 Or 573, 581, 135 P3d 297 (2006) (explaining that, although a single instance of neglect is not sufficient to violate DR 6-101(B), either a course of neglectful conduct or an extended period of neglect is sufficient). We find that the accused acted knowingly, at least for the period from August

_____

[7] Mahler answered the accused's response and explained that, although she had moved out-of-state, she had left several telephone numbers where the accused could contact her. According to Mahler, if the accused had wanted to call her, she knew how to do so.

[8] When the accused did not respond to the disciplinary counsel's September 1 letter regarding Mahler and her September 14 letter regarding Dolbeer, the Bar combined the two matters.

2005 to May 2006. Ricks and Mahler's repeated, unsuccessful attempts to contact her convince us that she was aware that she was neglecting her duties to her client.

The Bar also argues that the accused violated RPC 1.4(a), which provides that a "lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." We find that the accused violated the first part of that rule (requiring lawyers to keep clients reasonably informed) when she agreed with husband's counsel in February 2005 that Ricks would prepare the QDRO but failed to tell Mahler of that decision until six months later in August. She violated the second part of that rule (requiring lawyers to respond promptly to reasonable request for information) when she failed to respond to Mahler and Ricks' repeated requests for information. We find that the accused acted negligently in failing to inform Mahler, from February to August 2005, about the steps that she needed to take to divide the 401(k) account but that the accused acted knowingly when she failed, from August 2005 to May 2006, to respond to Mahler's repeated requests for information.

■ The Bar next argues that the accused violated RPC 8.1(a)(2), which provides in part that a lawyer, "in connection with a disciplinary matter, shall not * * * knowingly fail to respond to a lawful demand for information from [a] * * * disciplinary authority." The Bar argues, and we find, that the accused violated this rule twice. She violated it when she knowingly failed to respond to the disciplinary counsel's September 1 letter. The accused violated this rule again when she knowingly failed to respond to the LPRC's request for information.

■ We now turn to the remaining three charges regarding Mahler. The Bar argues that the accused violated RPC 1.15-1(d), which provides in part that a lawyer, "upon request by the client * * *, shall promptly render a full accounting regarding * * * property" held in trust. On that point, the complaint alleges that Mahler delivered a $2,000 retainer to the accused. The complaint also alleges that, "[i]n and between April 2004 and the present, the [a]ccused failed to account for the [r]etainer." However, the complaint does not

allege that Mahler ever requested an accounting, nor does the record reflect such a request. RPC 1.15-1(d) conditions a lawyer's obligation to promptly render a full accounting on a request from the client. Without evidence of a request, the Bar has failed to prove that the accused violated RPC 1.15-1(d).

■ The Bar also failed to prove that the accused violated RPC 1.16(d), which provides in part that, "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client * * * and refunding any advance payment of fee or expense that has not been earned or incurred." Under the terms of the rule, the initial issue is whether the accused terminated her representation of Maher. On that issue, the complaint alleges that, in October 2005, the accused failed to communicate with Mahler and Ricks about the preparation of the QDRO and failed to take actions to advance Mahler's interests. The complaint also alleges that, "[i]n or about the fall of 2005, the [a]ccused constructively terminated her representation of Mahler" and failed to take certain steps that RPC 1.16(d) requires upon termination of representation.

In determining whether the Bar proved that the accused violated RPC 1.16(d), we note, as an initial matter, that the allegation that the accused "constructively terminated her representation of Mahler" states a legal conclusion, not a fact that is deemed true as a result of the accused's default. *See Porter v. Hill*, 314 Or 86, 97, 838 P2d 45 (1992) (explaining that, in the civil context, an allegation that an amount was a "finance charge" is a legal conclusion, not a well-pleaded fact that is assumed to be true). Disregarding that allegation, we note that the remaining allegations show that the accused neglected Mahler's legal matters and that she failed to respond to Ricks and Mahler's questions. As explained above, those omissions are independent ethical violations, but we are not persuaded that, on this record, they also establish by clear and convincing evidence that the accused terminated her representation of Mahler. Because RPC 1.16(d) imposes certain obligations on a lawyer only "[u]pon termination of representation" and because we find that the accused did not terminate her representation of

Mahler, we conclude that the accused did not violate RPC 1.16(d).

 Finally, the Bar argues that the accused violated RPC 1.4(b), which provides that a "lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding representation." In its complaint, the Bar alleged, in a slight variation of the words of the rule, that the accused "failed to provide explanations reasonably necessary to permit Mahler to make informed decisions regarding representation." Not only is the phrase "reasonably necessary" a legal conclusion, but the complaint never specifies the "matter" that the accused failed to explain to Mahler or why any explanation regarding that unspecified matter was reasonably necessary for Mahler to make an informed decision.

It is true, as the Bar alleged and the evidence shows, that the accused failed to respond to Ricks and Mahler's requests for information and that she failed to inform Mahler about the status of her case in violation of RPC 1.4(a). However, not every failure to respond to a client's requests also constitutes a failure to explain a matter sufficiently to permit a client to make an informed legal decision. In this case, the complaint does not allege what matter the accused failed to explain, nor is the factual basis for the charge apparent from the documents that the Bar submitted. Finally, in its brief, the Bar never explains the factual basis for this charge; instead, it simply posits, without any explanation, that the accused violated RPC 1.4(b). In this posture, the record does not persuade us by clear and convincing evidence that the accused violated RPC 1.4(b).

 Having found that the accused violated RPC 1.3, RPC 1.4(a) (two counts), RPC 1.15-1(d) (two counts), DR 9-101(C)(3), and RPC 8.1(a)(2) (four counts), we turn to the appropriate sanction. We first consider: "(1) the duty violated; (2) the accused's mental state; and (3) the actual or potential injury caused by the [accused's] misconduct." *Kluge*, 332 Or at 259; ABA Standard 3.0. We next decide whether any aggravating or mitigating circumstances exist. *Kluge*, 332 Or at 259; ABA Standard 3.0. Finally, we consider

the appropriate sanction in light of the court's case law. *Kluge*, 332 Or at 259.

■ The accused violated two duties that she owed her clients. She knowingly violated her duty of diligence. ABA Standard 4.42. She also knowingly failed to preserve a client's property. ABA Standard 4.12. The accused also knowingly violated her duty to the legal profession. ABA Standard 7.2. The accused's violations of her duties to her clients did not result in any financial loss to either client, although Dolbeer suffered a delay in recovering the unearned balance of his retainer. However, the accused's repeated failure to respond to her clients' reasonable requests did result in injuries to her clients, "measured in terms of time, anxiety, and aggravation, in attempting to coax cooperation from the accused." *In re Arbuckle*, 308 Or 135, 140, 775 P2d 832 (1989). Finally, the legal system suffered an injury as a result of the accused's failure to provide the requested information in the course of this disciplinary proceeding: the Bar unnecessarily expended resources in seeking to obtain the information.

With one exception, the ABA Standards provide that suspension is the appropriate sanction for each of the accused's violations.[9] The standards provide that "[s]uspension is generally appropriate whe[n] a lawyer knowingly fails to perform services for a client and causes injury or potential injury." ABA Standard 4.42. Similarly, "[s]uspension is generally appropriate when a lawyer knows or should know that he [or she] is dealing with client property and causes injury or potential injury to a client." ABA Standard 4.12. Finally, "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system." ABA Standard 7.2.

Having determined preliminarily that suspension is an appropriate sanction, we next consider any aggravating

---

[9] We found that the accused negligently failed to keep Mahler informed of the status of her legal matter from February to August 2005. Reprimand is generally appropriate for that violation. ABA Standard 4.43.

and mitigating circumstances. We find three aggravating circumstances. First, on April 13, 2004, the Bar entered a stipulated order of discipline reprimanding the accused for conduct that is substantially similar to the conduct in this case. *In re Koch*, 19 DB Rptr 92 (2004); *see* ABA Standard 9.22(a) (listing prior discipline as an aggravating circumstance). We do not assign great weight to that prior order, however. *See In re Knappenberger*, 340 Or 573, 585, 135 P3d 297 (2006) (noting, as one consideration for reaching a similar conclusion, that "a stipulate[ed reprimand] has no precedential value because stipulated sanctions providing for a reprimand * * * are not reviewed by this court and because '[m]any facts and circumstances, most of which are not readily discernable from the public record, motivate a lawyer and the Bar to enter into a stipulation'" (quoting *In re Murdock*, 328 Or 18, 24 n 1, 968 P2d 1270 (1998)). Additionally, this case involves a pattern of misconduct. ABA Standard 9.22(l). Finally, it involves multiple offenses. ABA Standard 9.22(d).

We also find three mitigating factors. First, there is an "absence of a dishonest or selfish motive." ABA Standard 9.32(b). Second, the accused is remorseful. ABA Standard 9.32(c). The accused's statement to the trial panel, although brief, makes clear that she regrets her mistakes, as the trial panel expressly found. Third, the accused's lapses apparently were attributable, at least in part, to personal or emotional problems. ABA Standard 9.32(c). The record does not disclose the source of those problems, but we are persuaded by the accused's written responses to the Bar that she was undergoing personal problems that affected her ability to serve her clients' interests.

Having made a preliminary determination relying on the ABA Standards and having considered the aggravating and mitigating factors, we now turn to this court's case law. In comparing this case to prior cases, we note that the accused's violations essentially divide into two groups. First, the accused knowingly failed to attend to matters that would have brought both Dolbeer's and Mahler's dissolution proceedings to a conclusion. Specifically, after a trial court had entered a judgment of dissolution resolving all or most of each client's issues, the accused failed to provide an accounting and refund to Dolbeer, failed to respond to Mahler's

reasonable requests for information, and failed to take timely steps to arrange for a QDRO. Second, in both cases, in response to questions from the Bar, the accused provided the Bar with a detailed explanation of her actions and also provided the Bar with documentation in the Dolbeer matter; however, until the LPRC issued a subpoena to her, she did not respond to the Bar's later requests for additional information so that it could determine the accuracy of her initial responses.

Regarding the first group of violations, this court recently canvassed the relevant cases in *In re Redden*, 342 Or 393, 397-402, 153 P2d 113 (2007), and little purpose would be served by repeating that discussion here. Suffice it to say that the court has imposed sanctions ranging from a 60-day to a one-year suspension when a lawyer's neglect and inattention has resulted in lost opportunities for his or her client. *See, e.g., id.* at 395 (60-day suspension when lawyer's sustained neglect resulted in client's lost opportunity to enter into favorable settlement); *In re LaBahn*, 335 Or 357, 67 P3d 381 (2003) (60-day sanction when lawyer knowingly neglected to file proof of service resulting in dismissal of client's tort claim and aggravating and mitigating factors offset each other); *In re Meyer*, 328 Or 220, 970 P2d 647 (1999) (one-year suspension when lawyer's neglect and refusal to tell client of resulting default resulted in client's wages being garnished for temporary support and aggravating factors applied, such as lawyer's refusal to recognize the wrongful nature of his conduct and three prior disciplinary violations).

This case differs from *Redden, LaBahn,* and *Meyer* in a significant respect. Unlike the lawyers in those cases, the accused's actions did not result in any monetary loss or lost opportunity to her clients. Moreover, unlike the lawyer in *Meyer,* the accused recognizes that she erred, and she lacks the extensive record of disciplinary violations that the lawyer in that case possessed. This case does, however, involve multiple offenses regarding two different clients.

Regarding the accused's failure to respond to the Bar's inquires, this court has imposed a 120-day suspension when a lawyer provided no response to the Bar's request for information. *In re Miles,* 324 Or 218, 224-25, 923 P2d 1219

(1996). Conversely, the court has imposed a 63-day suspension on a lawyer, which it stayed conditioned on two years' probation, when the lawyer provided brief but inadequate responses to the Bar on six of the seven matters under investigation and then cooperated with the LPRC. *In re Haws*, 310 Or 741, 754, 801 P2d 818 (1990). In this case, the accused provided much more extensive responses to the Bar than in *Haws*, but she then failed to provide any response to disciplinary counsel's requests for additional information. Similarly, after being subpoenaed, the accused met with counsel for the LPRC and brought her clients' files to that meeting but thereafter failed to provide additional information that the counsel for the LPRC sought and that the accused had agreed to provide. We think that this case falls somewhere between *Haws* and *Miles*, although it is closer to *Haws*.

Considering the case law, the aggravating factors, and the mitigating factors, we conclude that the accused should be suspended for 120 days. We also conclude that probation is not appropriate. *See In re Obert*, 336 Or 640, 655, 89 P3d 1173 (2004) (explaining that "this court has not, as a general matter, utilized probation as an alternative to other forms of sanction").

The accused is suspended from the practice of law for 120 days, effective 60 days from the date of the filing of this decision.