Argued and submitted September 4, accused suspended from the practice of law for 45 days December 18, 1997, reconsideration denied February 10, 1998

# In re Complaint as to the Conduct of

# RONALD D. JONES,
*Accused.*

## (OSB 95-10; SC S43722)

951 P2d 149

Ronald D. Jones, Grants Pass, argued the cause *in propria persona*. William V. Deatherage, of Frohnmayer, Deatherage, Pratt, Jamieson & Clarke, P.C., Medford, filed the brief for the accused.

Chris L. Mullmann, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, a trial panel of the Disciplinary Board found the accused guilty of violating Disciplinary Rule (DR) 1-102(A)(3) and DR 1-102(A)(4),[1] and suspended him from the practice of law for 45 days. The accused seeks review only of the sanction, contending that he should receive a public reprimand. For the reasons that follow, we conclude that a 45-day suspension is the appropriate sanction.

The facts are straightforward. On December 13, 1993, Mr. and Mrs. Caputo met with the accused. The accused was retained to represent Mr. Caputo in a Chapter 7 bankruptcy proceeding. Because Mr. Caputo was scheduled to leave the state within a few days for basic training in the United States Air Force, the Caputos were in a hurry to complete the necessary paperwork.

The accused had Mr. Caputo sign a blank Chapter 7 bankruptcy petition and accompanying schedules and other forms. The petition and two other documents contained "perjury clauses"—declarations, under penalty of perjury, that the information provided therein was true and correct to the best of the signer's knowledge. The accused arranged to complete the blank documents with financial information to be provided by Mrs. Caputo at a later date. Upon receipt of that information, the accused completed the petition, schedules, and other forms, and filed them with the Bankruptcy Court.

The Oregon State Bar (the Bar) received a complaint a few months after the accused met with the Caputos. In November 1995, after conducting an investigation, the Bar filed a formal complaint, charging the accused with violating DR 1-102(A)(3) and (4). At a hearing in July 1996, a trial

---

[1] DR 1-102(A) provides, in part:

"It is professional misconduct for a lawyer to:

"* * * * *

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(4) Engage in conduct that is prejudicial to the administration of justice[.]"

panel heard testimony by the accused and considered stipulated facts submitted by the parties. The trial panel concluded that, by having Mr. Caputo sign blank documents that contained perjury clauses and later filing those documents in completed form with the Bankruptcy Court, the accused had violated DR 1-102(A)(3) and (4). The trial panel suspended the accused for 45 days.

■ As noted, the accused seeks review only of the sanction in this court, Rule of Procedure (BR) 10.1, contending that, instead of a suspension, he should receive a public reprimand. We review *de novo*. ORS 9.536(3); BR 10.6.

■ To determine the appropriate sanction, we look to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (Amended 1992) (ABA Standards) and Oregon case law. *In re Leonhardt*, 324 Or 498, 509, 930 P2d 844 (1997). The ABA Standards require consideration of the following factors: (1) the lawyer's mental state at the time of the violation; (2) the nature of the ethical duty violated; (3) the extent of actual or potential injury caused by the misconduct; and (4) the existence of any aggravating or mitigating factors. ABA Standard 3.0.

■■ As to mental state, the accused and the Bar dispute whether the accused acted with "knowledge" or "negligence." We need not resolve that dispute, however, in light of the procedural posture of this case. The trial panel concluded that, by having Mr. Caputo sign the documents in blank and filing those documents with the Bankruptcy Court, the accused engaged in misrepresentation under DR 1-102(A)(3). That rule requires, at the least, that a lawyer *knowingly* engage in a misrepresentation. *See In re Boothe*, 303 Or 643, 652 & n 7, 740 P2d 785 (1987) (stating principle); *In re Hiller*, 298 Or 526, 532, 694 P2d 540 (1985) (same). Because the accused does not challenge the trial panel's conclusion that he violated DR 1-102(A)(3), we deem him to have acted with knowledge, that is, with "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result," when he had his client sign blank documents that contained

perjury clauses and when he filed those documents with the court. *See* ABA Standards at 7 (defining "knowledge").

Turning to the nature of the ethical duties violated, we agree with the trial panel that, by violating the standard of conduct required by DR 1-102(A)(3) in his contact with Mr. Caputo, the accused violated his duty of candor. *See generally* ABA Standard 4.6 (discussing that duty). He also violated his duty to the legal system by filing documents with knowledge that they contained false statements—Mr. Caputo's declarations that, at the time of signing, the documents contained true and correct information. ABA Standard 6.1.

As to the issue of injury, we note that the accused's conduct did not cause any actual injury to his clients or to the legal system. The accused caused potential injury to Mr. Caputo, however, by placing him in a position in which he could have been subject to perjury charges.

We now consider the applicable aggravating factors. The most significant factor is the existence of a prior disciplinary record. ABA Standard 9.22(a). First, the accused has received two letters of admonition, one in 1992 and one in 1993, for two different incidents of misconduct. In the first incident, which occurred in 1987, the accused failed to take action on a client's case for several months, in violation of DR 6-101(B) (neglecting a client's legal matter). In the second incident, which occurred in 1989, the accused disclosed a comment made by a potential client to another person, in violation of DR 4-101(B) (preserving the confidences and secrets of a client).

The accused also entered into a stipulation for discipline in 1994, resulting in a public reprimand, for conduct that occurred in late 1992 and early 1993. In that incident, the accused had received a mortgage to secure payment from a client, relying upon the client's assurance that the client had an ownership interest in the mortgaged property. The accused later discovered that the client did not have an interest in the property, but delayed for a time before releasing the mortgage. The accused stipulated that his delay in releasing the mortgage violated DR 1-102(A)(3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation)

and DR 7-102(A)(2) (knowingly advancing a claim unwarranted in existing law).

■ We take this opportunity to discuss our application of the "prior offenses" aggravating factor. First, that factor refers to offenses that have been adjudicated prior to imposition of the sanction in the current case. Second, the following considerations also are an important part of our analysis: (1) the relative seriousness of the prior offense and resulting sanction; (2) the similarity of the prior offense to the offense in the case at bar; (3) the number of prior offenses; (4) the relative recency of the prior offense; and (5) the timing of the current offense in relation to the prior offense and resulting sanction, specifically, whether the accused lawyer had been sanctioned for the prior offense before engaging in the offense in the case at bar. Those considerations are important, because they can serve to heighten or diminish the significance of earlier misconduct.[2]

In this case, the accused was sanctioned for the first two prior offenses, involving neglect and disclosure of a client confidence, before he engaged in the misconduct at issue here. That demonstrates that the accused had "both warning and knowledge of the disciplinary process" when he met with the Caputos. *In re Hereford*, 306 Or 69, 75, 756 P2d 30 (1988) (internal quotation marks omitted). However, we also note that those two offenses involved relatively minor misconduct, different in kind from the misconduct at issue here,[3] that resulted only in letters of admonition. The misconduct at issue in the first offense also occurred more than 10 years ago, within a year of the accused's admission to the Bar.[4] In

---

[2] The relevant considerations are not limited to those enumerated in the text above. Other considerations also could be important, depending upon the circumstances of a particular case.

[3] The lack of similarity between the two earlier offenses and the misconduct at issue here does not preclude treating those earlier offenses as aggravating factors, however. *See In re Hereford*, 306 Or 69, 76, 756 P2d 30 (1988) (a more severe sanction was warranted because the lawyer had a disciplinary record, which involved unrelated misconduct).

[4] The ABA Standards treat the remoteness of a prior offense as a mitigating factor. *See* ABA Standard 9.32(m) (so providing); *see also In re Gastineau*, 317 Or 545, 558, 857 P2d 136 (1993) (applying ABA Standard 9.32(m) when the lawyer's earlier misconduct had occurred 19 years earlier, shortly after his admission to practice). In our view, however, any remoteness in time should serve to diminish the significance of a prior offense as an *aggravating* factor, rather than to function as a *mitigating* factor.

view of those considerations, the first two offenses do not carry significant weight in aggravation.

The accused's third prior offense, involving misrepresentation and advancement of an unwarranted claim, was of a more serious nature. Further, it involved misrepresentation in violation of DR 1-102(A)(3), which is one of the disciplinary rules involved in this case. In view of those circumstances, the third offense carries more weight in aggravation than the first two offenses. We also note, however, that the public reprimand for the third offense was not issued until after the accused had met with the Caputos. That fact lessens the significance of the third offense, to the extent that the accused had no opportunity to adapt his conduct in this case in response to being sanctioned for the third offense.

In short, when viewed in isolation, the accused's prior offenses carry varying degrees of significance in aggravation. Moreover, the presence of three prior offenses also demonstrates that the accused, at times, is careless in respect of his ethical obligations.

The only other aggravating factor is the accused's substantial experience in the practice of law at the time when he met with the Caputos, having been admitted to practice in 1986. ABA Standard 9.22(i).

Several mitigating factors also apply. First, the accused acted with neither a dishonest nor a selfish motive. ABA Standard 9.32(b). In agreeing to a stipulation of facts, testifying voluntarily at the hearing, and displaying a cooperative attitude throughout the proceedings, he also cooperated with the trial panel proceedings fully and freely. ABA Standard 9.32(e). In addition, approximately 20 months passed between the Bar's receipt of a complaint about the accused's misconduct and the filing of its formal complaint. Although that might be a reasonable time to investigate a more complex matter or a noncooperative lawyer, we view such a significant delay in this case, which involves essentially only one event that the accused admitted as a factual matter, as a mitigating factor.[5] See ABA Standard 9.32(j)

---

[5] We also note that there was a significant delay in this court between the accused's filing a request for review and oral argument.

(amended 1992) (delay in disciplinary proceedings is a mitigating factor); *In re Morrow*, 303 Or 102, 106-07 & n 1, 734 P2d 867 (1987) (applying *former* ABA Standard 9.32(i) when six years had passed between the lawyer's misconduct and the Bar's initial investigation and two additional years had passed between the initial investigation and the filing of a formal complaint).

On the charges at issue here, the ABA Standards suggest that a suspension would be the appropriate sanction. *See* ABA Standard 4.62 (suspension is appropriate when a lawyer knowingly engages in misrepresentation toward a client and causes potential injury to the client); ABA Standard 6.12 (suspension is appropriate when a lawyer "knows that false statements or documents are being submitted to the court * * *, and takes no remedial action, and causes * * * potential injury to a party to the legal proceeding"). Our case law also suggests that a short suspension would be an appropriate sanction in this case. In *In re Walker*, 293 Or 297, 306, 308, 647 P2d 468 (1982), this court imposed a 30-day suspension upon a lawyer who knowingly had filed a false statement concerning the status of a case with the court, with the intent to mollify the court and to present himself in a favorable light, resulting in a violation of the same disciplinary rules at issue here.

In the absence of a prior disciplinary record, the appropriate sanction in this case would be a 30-day suspension, the same suspension imposed in *Walker*. In light of the accused's record, however, a longer suspension is warranted. We conclude that, in view of all the relevant considerations, a 45-day suspension is the appropriate sanction.

The accused is suspended from the practice of law for a period of 45 days commencing on the effective date of this decision.