Argued and submitted January 7, accused suspended from the practice of law for 60 days April 17, reconsideration denied July 29, 2003

In re Complaint as to the Conduct of

# WILLIAM S. LaBAHN,
*Accused.*

## (OSB 99-2; SC S48901)

67 P3d 381

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the briefs for the Oregon State Bar.

John C. Fisher, Eugene, argued the cause and filed the brief for the accused.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.*

PER CURIAM

---

\* Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleged that, among other charges, the accused violated Code of Professional Responsibility Disciplinary Rule (DR) 1-102(A)(3) (prohibiting dishonesty, fraud, deceit, and misrepresentation) and DR 6-101(B) (prohibiting neglect of legal matter). The facts centered on the accused's alleged neglect of a civil case that the trial court had dismissed for failure to prosecute and his subsequent failure to tell the client about the dismissal for over one year. A trial panel of the Disciplinary Board concluded that the accused had violated DR 6-101(B), but not DR 1-102(A)(3), and imposed a 90-day suspension. The Bar sought review under ORS 9.536(1) and Bar Rule of Procedure (BR) 10.1.

The facts are largely undisputed. The accused became a member of the Bar in 1990. He has one instance of prior discipline, consisting of a March 1998 letter of admonition that the Bar issued admonishing the accused for failing to act with diligence and promptness and for failing to keep his client informed about the status of her case.

The alleged violations in this proceeding occurred after a client, Norris, retained the accused in October 1996 to pursue claims against a retail store, Wal-Mart, and a store security employee for false arrest and malicious prosecution. The retainer agreement required Norris to pay the accused an initial retainer of $1,500. The accused and Norris understood that the $1,500 would belong to the accused on payment and that the accused would refund the money only if he failed to file a complaint. Before Norris retained the accused, Wal-Mart had offered Norris a $5,000 settlement, which Norris had rejected.

On December 16, 1996, the last day to file within the statute of limitations, the accused filed the complaint. The accused sent Norris a copy of the complaint and stated that he would serve the defendants later that week. However, the accused concedes that he did not effect timely service within 60 days after filing the complaint. *See* ORS 12.020(2) (explaining procedure).

On May 12, 1997, the court notified the accused that it would dismiss the action unless he filed a proof of service within 28 days. After receiving that notice, the accused, on May 20, 1997, served the summons and complaint on Wal-Mart. The accused agrees that he failed to commence the action in a timely manner for purposes of the statute of limitations. *See* ORS 12.020(1) (discussing filing and service requirements). The accused did not file a proof of service. As a result, on July 10, 1997, the court entered a judgment dismissing the case for failure to return service. When the accused learned of the dismissal a few weeks later, he states that he "vaguely" considered filing a motion to set aside judgment, but did not because he concluded that the court probably would not grant such a motion.

When the accused filed the complaint, the accused told Norris that he would contact Norris at necessary and important times. However, the accused did not contact Norris and did not inform Norris of the dismissal. Norris testified that, in the months after December 1996, he telephoned the accused at least twice and left messages, but that the accused did not return the calls. The accused does not recall receiving those messages.

In the summer of 1998, Norris contacted another lawyer in connection with a motor vehicle accident. Norris asked that lawyer also to look into the Wal-Mart matter. The lawyer informed Norris that the court had dismissed the complaint against Wal-Mart. Norris then contacted a law firm to pursue a malpractice claim against the accused. Those lawyers informed Norris that the court had dismissed the case for failure to file a proof of service. They also told Norris to contact the accused and ask him why the court had dismissed the Wal-Mart case.

In August 1998, Norris telephoned the accused. The accused testified that, when he took the call, he knew who Norris was, because Norris's matter was "something [that had] been eating at [him] for awhile before he called." The accused told Norris that the court had dismissed the complaint for failure to prosecute. Norris asked the accused to refund the $1,500 retainer, plus $138 in costs. The accused agreed to and did refund the $1,500, but said that he could

not remember whether he or Norris had advanced the costs. The accused asked Norris to check his records and call him back. Norris did not call about the $138 and, instead, filed a Bar complaint on September 25, 1998. After establishing that Norris had advanced the costs, the accused refunded the $138. The accused admitted that, if Norris had not contacted him, he would have kept the $1,500.

The Bar filed a formal complaint against the accused on September 1, 1999, and amended the complaint on October 23, 2000. The Bar's amended complaint charged the accused with violating DR 1-102(A)(3), DR 6-101(B), DR 9-101(A) (prohibiting failure to deposit client funds in trust account), and DR 9-101(C)(3) (prohibiting failure to account for client funds). In his answer, the accused admitted that he had violated DR 6-101(B), but denied all the other charges.

The trial panel concluded that, based on the accused's admission, the Bar had established that the accused violated DR 6-101(B) for failing to serve the defendants and file a proof of service within the time permitted by law and for failing to communicate with Norris for over one year after the court had dismissed the case. The trial panel concluded that the accused did not violate DR 1-102(A)(3), because the failure to inform Norris of the dismissal did not show that the accused was "actively scheming" to deceive Norris, nor had the accused made any affirmative statement about the case to Norris, so he was under no duty to correct a prior statement. The trial panel dismissed the remaining charges, including the DR 1-102(A)(3) charge, and imposed a 90-day suspension.

On review, the Bar urges the court to accept the panel's finding that the accused violated DR 6-101(B), find the accused guilty of the DR 1-102(A)(3) charge, and impose at least a four-month suspension and perhaps as much as a one-year suspension.[1] In response, the accused requests that this court impose only the sanction of a public reprimand or, in the alternative, a suspension.

---

[1] The Bar does not seek review of the trial panel's dismissal of the DR 9-101(A) and DR 9-101(C)(3) charges.

■      We first address the charge under DR 6-101(B), which provides that "[a] lawyer shall not neglect a legal matter entrusted to the lawyer." The accused admits that he violated DR 6-101(B) by failing to serve the defendant, failing to file proof of service with the court within the statute of limitations, and failing to inform Norris of the status of the case from July 1997 to August 1998. We accept the concession and conclude that the accused violated DR 6-101(B).

■      We next address DR 1-102(A)(3), which provides that "[i]t is professional misconduct for a lawyer to * * * [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The Bar alleged that the accused violated DR 1-102(A)(3) in two respects. First, the Bar claimed, and the accused admitted, that from July 1997 until August 1998, "the Accused failed to advise Norris that his case had been dismissed." Second, the Bar alleged that, when the accused did tell Norris of the dismissal, the accused failed to advise Norris that dismissal had occurred because the accused had failed to file a proof of service. The trial panel rejected the latter theory, and the Bar does not pursue it before this court. As a result, the only issue before the court is whether the accused engaged in misrepresentation by omission under DR 1-102(A)(3) by failing for over one year to inform Norris that the court had dismissed his tort action.

The Bar has the burden of establishing by clear and convincing evidence its charge of misrepresentation by omission under DR 1-102(A)(3). BR 5.2. This court is equally divided with respect to whether the Bar has established that charge. Consequently, the court dismisses that charge against the accused. The remaining question concerns the appropriate sanction for the accused's neglect of a legal matter. We turn now to that issue.

■■      To determine the appropriate sanction in a disciplinary proceeding, the court looks to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and Oregon case law. *In re Huffman*, 331 Or 209, 223, 13 P3d 994 (2000). The court ascertains the appropriate sanction for the violation present here by considering (1) the duty violated, (2) the accused's mental state, (3) the actual or potential injury caused by the

misconduct, and (4) the existence of aggravating or mitigating circumstances. ABA Standard 3.0.

Every lawyer owes a duty of diligence to the client. ABA Standard 4.4. In regard to the accused's mental state, the accused acted with knowledge in neglecting Norris's matter. "Suspension is generally appropriate when * * * a lawyer knowingly fails to perform services for a client and causes injury[.]" ABA Standard 4.42(a).

Several aggravating factors are present, including a prior disciplinary offense, a selfish motive in not contacting Norris, and substantial experience in the practice of law. ABA Standards 9.22(a), (b), and (i). The prior disciplinary offense, as noted above, concerns the letter of admonition that the Bar issued on March 24, 1998. The underlying conduct in that matter similarly involved the accused's failure to represent a client diligently and to keep the client informed about the status of the client's legal matter. The trial panel stated that the Bar had issued the letter of admonition "after the conduct complained of in this case, and [thus the letter] could not serve as a warning to the Accused regarding his conduct herein." Consequently, the trial panel accorded little weight to the letter of admonition.

■■ We do not agree with that analysis. As this court observed in *In re Cohen*, 330 Or 489, 500, 8 P3d 953 (2000), a letter of admonition is not a form of sanction or a record of prior discipline imposed on an accused lawyer. However, this court considers a letter of admonition as evidence of past misconduct "if the misconduct that gave rise to that letter was of the same or similar type as the misconduct at issue in the case at bar." *Id.* The letter of admonition that the Bar issued to the accused in March 1998 satisfies that criterion. Because the letter of admonition constitutes evidence of prior misconduct, we evaluate its seriousness according to the criteria set out in *In re Jones*, 326 Or 195, 200, 951 P2d 149 (1997):

"We take this opportunity to discuss our application of the 'prior offenses' aggravating factor. First, that factor refers to offenses that have been adjudicated prior to imposition of the sanction in the current case. Second, the following considerations also are an important part of our analysis: (1) the relative seriousness of the prior offense and

resulting sanction; (2) the similarity of the prior offense to the offense in the case at bar; (3) the number of prior offenses; (4) the relative recency of the prior offense; and (5) the timing of the current offense in relation to the prior offense and resulting sanction, specifically, whether the accused lawyer had been sanctioned for the prior offense before engaging in the offense in the case at bar. Those considerations are important, because they can serve to heighten or diminish the significance of earlier misconduct."

(Footnote omitted.)

The trial panel relied on one of the *Jones* criteria—the timing of the current offense—in discounting the seriousness of the letter of admonition. The Bar issued the letter of reprimand after the accused began to neglect Norris's legal matter. However, the accused continued his neglectful conduct for approximately five months after his receipt of the Bar's letter of admonition. The facts demonstrate that the accused chose to pay insufficient heed to the message regarding the lawyer's duty of diligence that the letter of admonition conveyed. *See In re Brandt/Griffin*, 331 Or 113, 148-49, 10 P3d 906 (2000) (discussing aggravating effect of disregarding recent letter of admonition issued for similar misconduct).

Following the construct described in *Jones*, we note that the accused's prior misconduct was moderately serious and resulted in a letter of admonition. The letter of admonition involved misconduct similar to that involved here, is the accused's only instance of prior misconduct, and concerned relatively recent misconduct by the accused. We conclude, on the basis of our consideration of the *Jones* criteria, that the letter of admonition constitutes evidence of misconduct that heightens, at least to a moderate degree, the significance of the accused's neglect of Norris's case.

■     The mitigating factors include cooperation with the Bar, the imposition of other penalties (in the form of a $15,000 malpractice settlement), and genuine remorse. ABA Standards 9.32(e), (k), and (l). In this instance, we conclude that the aggravating and mitigating factors are in equipoise.

Preliminarily, our consideration of the ABA Standards indicates that a suspension is appropriate.

This court's case law provides some guidance regarding the appropriate sanction. In *In re Schaffner*, 323 Or 472, 918 P2d 803 (1996), the accused lawyer neglected his clients' representation by failing to return telephone calls from the clients and the opposing lawyer, failing to respond to discovery requests, and failing to inform the clients of their scheduled depositions, a motion for sanctions, and an arbitration hearing. The court found that the lawyer's neglect caused damage to the clients but concluded that it could not determine a particular amount of damages. *Id.* at 475. The court imposed a 60-day suspension "for knowing neglect of his clients' case over a period of time." *Id.* at 481. The court imposed an additional 60-day suspension for a separate disciplinary rule violation. *Id.*

In *In re Butler*, 324 Or 69, 921 P2d 401 (1996), the accused lawyer filed a complaint for a client but failed to serve the defendant. As a result, the court dismissed the action with prejudice. The lawyer failed to inform the client about the dismissal and gave false assurances to the client about the status of the case. The court noted that the lawyer "has engaged in a pattern of similar misconduct, spanning about 10 years and involving three separate clients." *Id.* at 76. The court concluded that the accused lawyer was guilty of neglect and dishonesty, and imposed a one-year suspension.

In *In re Kissling*, 303 Or 638, 740 P2d 179 (1987), the accused lawyer violated his promises to multiple clients to investigate and pursue claims against others and misled the clients about his inaction. The court determined that the lawyer had engaged in conduct involving dishonesty, neglected the legal matters, failed to carry out a contract of employment, and made false statements, and ordered a 63-day suspension. *Id.* at 641-42.

In *In re Dugger*, 299 Or 21, 697 P2d 973 (1985), the accused lawyer commenced but then abandoned a lien enforcement proceeding, failed to communicate with the client, and misrepresented the status of the case. In discussing the appropriate sanction for the lawyer's neglect of the client's legal matter, the court stated:

"From a client's viewpoint, nonperformance by neglect, needless and unexplained delay, and especially failure to communicate or to respond to inquiries no doubt can be as frustrating as outright prevarication or some other disciplinary violations can be, even when the neglect does not result in the ultimate loss of the client's objective. *In re Holm*, 285 Or 189, 194, 590 P2d 233 (1979) (Holman, J., concurring) (60 day suspension for dilatoriness and neglect); *In re Guerts*, 290 Or 241, 246, 620 P2d 1373 (1980) (30 day suspension for neglect, and noting 'potentially disastrous consequences of procrastination or inattention for the parties concerned.')"

*Id.* at 29. The court concluded that the lawyer was guilty of neglect, misrepresentation, and failure to cooperate with a Bar investigation, and imposed a 63-day suspension. *Id.* at 29, 30.

In *In re Morrow*, 297 Or 808, 688 P2d 820 (1984), the accused lawyer failed to timely file a legal action and repeatedly led the client to believe that he had filed the action and was negotiating a settlement. The court concluded that the accused lawyer had neglected the client's case and committed misrepresentation, and ordered a 60-day suspension. *Id.* at 818, 822.

In *In re Fuller*, 284 Or 273, 586 P2d 1111 (1978), the accused lawyer committed conduct that was similar to that described in *Morrow*. The court imposed a 60-day suspension, albeit for failing to correct the client's false impression about the status of the legal matter rather than for neglect of the legal matter. *Id.* at 277-78.

The foregoing discussion of this court's case law confirms the seriousness of a lawyer's misconduct in neglecting a legal matter entrusted by a client. Although the accused's conduct is similar to the neglectful behavior shown in *Butler*, it is far less aggravated. The one-year suspension ordered in *Butler* would not be appropriate here. The accused's misconduct resembles the neglect shown in *Schaffner*, which led to a 60-day suspension. Unlike the vague evidence of the extent of client injury in *Schaffner*, the evidence in this case shows that the accused's neglect produced a costly injury to Norris.

The facts in *Kissling*, *Dugger*, *Morrow*, and *Fuller* also are analogous to the facts in this case. Those cases also led to suspensions of approximately 60 days. In one sense, the accused's misconduct is more serious than the misconduct shown in those cases, because the accused failed to respond appropriately to the Bar's admonition in March 1998 and continued to neglect Norris's case for five more months. By contrast, the court determined that the accused lawyers in those cases were guilty of multiple charges of misconduct, including misrepresentation to their clients. Although we conclude that the accused is guilty of one charge of neglect of a legal matter, our review of this court's analogous cases indicates that a 60-day suspension is the appropriate sanction in this case.

After considering our past cases, the aggravating and mitigating circumstances present here, the accused's state of mind, and the seriousness of the accused's neglect of the matter entrusted to him by Norris, we conclude that a 60-day suspension is the appropriate sanction, and we impose it on the accused.

The accused is suspended from the practice of law for 60 days, commencing 60 days from the date of filing of this decision.