Argued and submitted January 4, accused is suspended from practice of law for 60 days, commencing 60 days from date of decision February 23, 2007

# In re Complaint as to the Conduct of

## WILLIAM REDDEN,
*Accused.*

## (OSB 05-75; SC S53578)

153 P3d 113

David J. Elkanich, Hinshaw & Culbertson LLP, Portland, argued the cause and filed the brief for the accused. With him on the brief was Peter R. Jarvis.

Jeffrey D. Sapiro, Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

PER CURIAM

**PER CURIAM**

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) alleged that the accused violated *former* Oregon Code of Professional Responsibility Disciplinary Rule (DR) 6-101(B) ("A lawyer shall not neglect a legal matter entrusted to the lawyer.").[1] The accused concedes that he had violated that rule. A trial panel of the Disciplinary Board imposed a 120-day suspension from the practice of law. The accused sought review, requesting that this court suspend him from the practice of law for 60 days. We review this case *de novo*. ORS 9.536(2). For the reasons that follow, we conclude that the appropriate sanction for the accused's violation is a 60-day suspension from the practice of law.

The following facts are not disputed. The accused was admitted to the Bar in 2002, and he has no previous disciplinary record. In December 2002, a client retained the accused to dispute a legal determination by a hearings officer that he owed his ex-wife $10,122.15 in arrearages for child support. At the accused's request, the trial court set a hearing. Subsequently, the client and his ex-wife agreed to stipulate to a lower amount in arrearages, and the client informed the accused of that agreement. The accused advised the trial court that the matter was resolved and that it could take the case off the hearing docket. The accused drafted a stipulation, but failed to have the ex-wife sign it and did not submit it to the court. In fact, as the accused concedes, from February 2003 to November 2004, he took no further action on his client's case.

In November 2004, the client complained to the Bar about the accused's conduct. The accused admitted to the Bar that he had allowed the client's legal matter to slip "to the bottom of the stack" and that he should have completed the stipulation. As a result, the Bar filed a complaint alleging that the accused had violated DR 6-101(B) by neglecting the client's legal matter. The accused did not respond, and the Bar filed a motion for an order of default. The trial panel

---

[1] The Oregon Rules of Professional Conduct became effective January 1, 2005. Because the conduct at issue here occurred before that date, we apply the Oregon Code of Professional Responsibility.

granted the motion and issued an order concluding that the accused had violated DR 6-101(B). The trial panel requested memoranda from the accused and the Bar regarding the appropriate sanction. The accused did not submit a memorandum.

■■ Subsequently, the trial panel found:

"The failure of the [a]ccused to respond in any way to his client and his failure to respond to the [c]omplaint of the [Bar] in this proceeding shows such a lack of interest in participating responsibly as a member of the Oregon Bar that the [t]rial [p]anel is of the opinion that the [a]ccused should be suspended from practice for a period of 120 days."

The accused does not challenge the trial panel's determination that he violated DR 6-101(B), and we agree that the accused violated that rule. The only issue presented here is the appropriate sanction. In determining a sanction, this court first considers "(1) the duty violated, (2) the accused's mental state, and (3) the actual or potential injury caused by the misconduct." *In re Rhodes*, 331 Or 231, 238, 13 P3d 512 (2000); American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards). This court then may adjust the sanction if any aggravating or mitigating circumstances exist. *Rhodes*, 331 Or at 238. Finally, this court reviews Oregon case law for guidance in determining the appropriate sanction. *In re Stauffer*, 327 Or 44, 66, 956 P2d 967 (1998).

Here, the accused violated his duty to represent the client with reasonable diligence and promptness. ABA Standard 4.4. The accused concedes that he acted knowingly in failing to perform services diligently for his client. The accused also admits that he caused actual injury to his client because his client paid a $300 retainer to the accused, but received no benefit, and the accused failed to complete the settlement between the client and his ex-wife. The ABA Standards suggest a suspension when "a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client." ABA Standard 4.42(a).

We next consider whether any aggravating or mitigating circumstances are present. "[A]ggravating circumstances are any considerations, [*sic*] or factors that may justify an increase in the degree of discipline to be imposed."

ABA Standard 9.21. The trial panel found one aggravating factor, *i.e.*, that the accused's neglect of his client's matter constituted "a pattern of misconduct." ABA Standard 9.22(c). The Bar submits that, although the accused did not neglect the legal matters of multiple clients or commit multiple rule violations, he did neglect his client's matter at distinct periods of time. The Bar contends that those "distinct periods of time in which the [a]ccused should have, but did not act, constitutes a pattern of misconduct." Similarly, the trial panel opined that "the [a]ccused's neglect was on-going over many months and continued even after [the client] made attempts to contact the [a]ccused and learn about the status of his legal matter."

■   That reasoning blurs the elements of a "pattern of misconduct" that the Bar must prove to establish that aggravating circumstance. In order to prove a DR 6-101(B) *violation*, "the Bar must show a *course* of negligent conduct." *In re Eadie*, 333 Or 42, 64, 36 P3d 468 (2001) (internal quotation marks omitted; emphasis added). A "course" is "an ordered continuing process, succession, sequence, or series." *Webster's Third New Int'l Dictionary* 522 (unabridged ed 2002). Thus, DR 6-101(B) requires proof of a succession or series of negligent actions. Additionally, this court has stated that, in considering an allegation under DR 6-101(B), this court "view[s] a lawyer's conduct along a temporal continuum, rather than as discrete, isolated events." *In re Magar*, 335 Or 306, 321, 66 P3d 1014 (2003) (viewing continuum of accused lawyer's representation of client, lawyer did not neglect client's legal matter). However, as the following discussion demonstrates, the course of neglect inquiry under DR 6-101(B) is separate from the inquiry into a pattern of misconduct for purposes of *sanction*.

When considering the sanction issue, this court has found a pattern of misconduct in DR 6-101(B) cases when the accused lawyer engaged in similar misconduct in the past, the lawyer's conduct violated multiple disciplinary rules, or the lawyer neglected the legal matters of multiple clients. *See, e.g., In re Obert*, 336 Or 640, 653, 89 P3d 1173 (2004) (finding pattern of misconduct when accused lawyer had neglected several clients and committed multiple rule violations); *In re Cohen*, 330 Or 489, 501-02, 8 P3d 953 (2000) (finding pattern of misconduct because court had disciplined

lawyer recently for similar neglect of client); *In re Chandler*, 306 Or 422, 430, 760 P2d 243 (1988) (finding pattern of misconduct when lawyer had neglected multiple clients and pattern spanned several years and two previous disciplinary proceedings). Following that same mode of analysis in deciding the appropriate sanction here, we view the accused's conduct during the entirety of his representation of his client. The accused's conduct constituted a serious neglect of his client's legal matter. However, the accused has no prior disciplinary history, and the record is devoid of any evidence that the accused engaged in similar professional misconduct in the past. The accused represented the client on one legal matter, not multiple matters. The Bar did not charge the accused with multiple rule violations, and it admits that the accused did not neglect other clients. We conclude that the Bar did not establish that the accused engaged in "a pattern of misconduct" under ABA Standard 9.22(c).

"[M]itigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." ABA Standard 9.31. The trial panel found the following mitigating factors: (1) absence of a prior disciplinary record, ABA Standard 9.32(a); (2) absence of a dishonest or selfish motive, ABA Standard 9.32(b); and (3) inexperience in the practice of law, because the accused was admitted to practice in 2002, ABA Standard 9.32(f). Neither the Bar nor the accused disputes those trial panel findings. On the basis of the evidence in the record, we agree that those mitigating factors apply in this case.

We next consider this court's prior case law. The Bar contends that, in reviewing this court's case law, the 120-day sanction imposed here is within a permissible range of sanctions for the type of misconduct that the accused committed. The Bar cites several cases, but particularly relies on *In re Meyer*, 328 Or 220, 970 P2d 647 (1999), and *In re Knappenberger*, 340 Or 573, 135 P3d 297 (2006).

In *Meyer*, the accused lawyer violated DR 6-101(B) when he neglected a client's divorce matter. The client emphasized that his immediate concern was opposing his wife's request for temporary support. The lawyer failed to file the appropriate paperwork or respond to the wife's motions.

The lawyer arrived unprepared to a settlement meeting and failed to provide opposing counsel necessary financial documentation, despite promising to do so. The trial court found the client in default and issued an order requiring the client to commence paying temporary support immediately. The lawyer did not inform his client of that order. Consequently, the wife garnished the client's wages. *Meyer*, 328 Or at 222-24.

This court suspended the accused lawyer in *Meyer* for one year. The court found that several aggravating factors were present, but found no mitigating factors. The lawyer had substantial experience in the practice of law, ABA Standard 9.22(i), and he refused to acknowledge the wrongful nature of his conduct, ABA Standard 9.22(g). More notably, he had several prior disciplinary offenses, which, in the court's view,

> "taken together, carry significant weight in aggravation, because the presence of three prior disciplinary rule violations resulting in two separate sanctions demonstrate that the accused is careless with respect to his ethical obligations."

*Id.* at 229.

In *Knappenberger*, as in *Meyer*, the accused lawyer violated DR 6-101(B) by neglecting a client's divorce matter. 340 Or at 575. The lawyer had to file a qualified domestic relations order (QDRO) approved by the court with the client's husband's employer. Over a period of more than eight years, the lawyer neglected to take the steps necessary to finalize the QDRO, despite repeated requests to do so by his client, opposing counsel, and the husband's employer. *Id.* at 581.

This court suspended the accused lawyer in *Knappenberger* from the practice of law for one year. The court observed that two aggravating factors were present: the lawyer had two prior disciplinary cases in which he had committed four rule violations, ABA Standard 9.22(a), and he had substantial experience in the practice of law, ABA Standard 9.22(i). In mitigation, the Bar conceded that the lawyer lacked a dishonest or selfish motive, ABA Standard 9.32(b),

and he fully had cooperated in the disciplinary proceedings, ABA Standard 9.32(e). *Id.* at 582-86. In examining pertinent case law, the court concluded that *Meyer* most resembled *Knappenberger* and that the mitigating factors in the latter case did not present a basis for distinguishing the two. *Id.* at 586-88. This court also stated:

> "[A]ll the accused's offenses, taken together, 'present an unsettling record of violating the disciplinary rules.' * * * Indeed, they carry significant weight in aggravation, because their presence 'demonstrates that the accused is careless with respect to his ethical obligations.' [*Meyer*, 328 Or at 292]."

*Knappenberger*, 340 Or at 586.

The Bar maintains that it is not "suggesting that the [a]ccused be suspended from practice for as long as Meyer." Instead, it suggests that "[a] reduction in the sanction for the [a]ccused from the one year in *Meyer* to the 120 days imposed by the [t]rial [p]anel takes into account the differences in aggravating and mitigating factors in the two cases." The Bar misses two key distinctions between the case here and the facts in *Meyer* and *Knappenberger*. First, as noted earlier, in *Meyer* and *Knappenberger*, the accused lawyers' prior disciplinary violations added significant weight in aggravation. Here, the accused has no prior disciplinary offenses, and no aggravating factors are present.

Second, it appears that the trial panel in this case regarded the accused's default either as an aggravating factor or some form of misbehavior in determining the sanction. As we noted earlier, the trial panel stated:

> "[T]he failure of the [a]ccused to respond in any way to his client and *his failure to respond to the [c]omplaint of the [Bar] in this proceeding* shows such a lack of interest in participating responsibly as a member of the Oregon Bar that the [t]rial [p]anel is of the opinion that the [a]ccused should be suspended from practice for a period of 120 days."

(Emphasis added.)

That was error. This court has held that an accused's failure to attend a trial panel hearing on a disciplinary complaint is not an aggravating factor. *In re Schaffner*, 323 Or

472, 481, 918 P2d 803 (1996) (so stating; court also noted disciplinary rules do not require an accused to attend trial panel hearing). Thus, we are not persuaded that *Meyer* and *Knappenberger* parallel this case.

Instead, we agree with the accused that this case is factually similar to *In re LaBahn*, 335 Or 357, 67 P3d 381 (2003). In *LaBahn*, the accused lawyer violated DR 6-101(B) when he knowingly neglected his client's tort claim against a retail store by failing to file proof of service with the trial court in a timely matter. The court dismissed the client's complaint. The lawyer did not inform his client of the dismissal and avoided his client's telephone calls. Only after the client asked another lawyer to look into the matter more than a year later did the client discover that the court had dismissed his case. *Id.* at 359-60.

This court found that three aggravating factors and three mitigating factors were present, but concluded that those factors were in equipoise. *Id.* at 363-64. This court then reviewed several analogous cases that involved similar misconduct and resulted in 60-day suspensions. *See Schaffner*, 323 Or at 472 (accused knowingly neglected clients' case for several months by failing to communicate with clients and opposing counsel); *In re Kissling*, 303 Or 638, 740 P2d 179 (1987) (63-day suspension imposed, because accused lawyer had failed to investigate and pursue claims for several clients and had misled them about his inaction); *In re Dugger*, 299 Or 21, 697 P2d 973 (1985) (63-day suspension imposed when accused lawyer neglected client's case and misrepresented to the client the status of his case); *In re Morrow*, 297 Or 808, 688 P2d 820 (1984) (accused lawyer neglected to timely file a legal action, yet informed his client otherwise and advised client he was negotiating a settlement). The *LaBahn* court concluded that the accused lawyer's neglectful behavior merited a 60-day suspension. *LaBahn*, 335 Or at 367.

The accused lawyer in *LaBahn* and the accused in this case knowingly neglected their clients' legal matters for similar periods of time, causing their clients actual injury. Our review of this court's analogous cases indicates that a 60-day suspension is appropriate. As noted in *In re Knappenberger*, 337 Or 15, 32-33, 90 P3d 614 (2004), we "generally [have] imposed

60-day suspensions" in cases involving DR 6-101(B) violations comparable to the accused's violation.

After considering the factual circumstances of this case, the ABA Standards, and this court's case law, we conclude that the accused should be suspended from the practice of law for 60 days.

The accused is suspended from the practice of law for 60 days, commencing 60 days from the date of this decision.