The PEOPLE of the State of Colorado, Complainant

**Philip M. KLEINSMITH, Respondent.**

**Case Number: 16PDJ031**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

November 18, 2016.

## OPINION AND DECISION IMPOSING SANCTIONS UNDER C.R.C.P. 251.19(b)

WILLIAM R. LUCERO, PRESIDING DISCIPLINARY JUDGE

Philip M. Kleinsmith ("Respondent"), a solo practitioner, represented a bank in seventy-four real estate foreclosure actions in Idaho and Montana between 2012 and 2014. Respondent's firm hired a title company to provide services for these foreclosure cases. The title company charged Respondent's firm just over $55,000.00. Respondent's firm, in turn, billed its bank client for the title services. Although Respondent's firm received payment from its client for those services, Respondent used the funds to pay other expenses of his law firm rather than remitting the funds to the title company. Respondent's conversion of funds that should have been paid to the title company warrants disbarment.

## I. PROCEDURAL HISTORY

On April 1, 2016, Alan C. Obye, Office of Attorney Regulation Counsel ("the People"), filed a petition with Presiding Disciplinary Judge William R. Lucero ("the PDJ"), seeking Respondent's immediate suspension under C.R.C.P. 251.8. After holding a hearing attended by both parties, the PDJ issued a report to the Colorado Supreme Court on May 31, 2016, finding reasonable cause to believe that Respondent had caused immediate and substantial private harm by converting funds, and recommending that Respon-

dent be immediately suspended from the practice of law. The Colorado Supreme Court accepted that recommendation and immediately suspended Respondent on June 10, 2016.

The People then filed a complaint on July 1, 2016, alleging that Respondent violated Colo. RPC 1.15A(b) and Colo. RPC 1.15(b) (2008) (a lawyer shall promptly deliver to the client or third person any funds that the client or third person is entitled to receive); [1] Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving fraud, deceit, misrepresentation, or dishonesty); and Colo. RPC 8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice). Respondent answered on July 21, 2016, denying that he violated any Rules of Professional Conduct.

On August 1, 2016, Respondent moved for summary judgment. One week later, the People filed a combined response and cross-motion for summary judgment. After considering Respondent's combined reply and response, the PDJ issued an "Order Denying Respondent's Motion for Summary Judgment and Granting in Part Complainant's Cross Motion for Summary Judgment" on September 16, 2016. In that order, the PDJ granted the People's motion for summary judgment as to Claim I of the complaint, which alleged a violation of Colo. RPC 1.15A(b), and Claim II of the complaint, which alleged a violation of Colo. RPC 8.4(c). The PDJ did not find as a matter of law, however, that Respondent had violated Colo. RPC 8.4(d), as charged in Claim III of the complaint.

By order of September 26, 2016, the PDJ granted the People's motion to dismiss Claim III of the complaint. The PDJ also converted the hearing—which had earlier been continued from September 27 to October 25 at the People's request—to a hearing on the sanctions. On October 3, 2016, the PDJ denied Respondent's motion to reconsider the summary judgment order.

---

1. For purposes of simplicity, the PDJ generally refers below to Colo. RPC 1.15A(b) and Colo. RPC 1.15(b) (2008) simply as "Colo. RPC 1.15(A)(b)," since the language of the two versions is essentially equivalent.

Both parties filed hearing briefs in advance of the October 25 hearing. In his brief, Respondent acknowledged the date of the October 25 hearing, but stated merely that he has been disciplined only once before, that he planned to appeal the PDJ's summary judgment order, and that he did not intend to appear at the hearing unless ordered to do so.

The PDJ presided at the October hearing, along with Hearing Board members Marcy G. Glenn, and James X. Quinn, both lawyers. Obye represented the People, and Respondent did not appear. During the hearing, the Hearing Board considered the People's exhibits 1 and 2 and the testimony of Quinn Stufflebeam, which he offered by telephone in accordance with an earlier order issued by the PDJ. On October 26, 2016, the People filed a "Status Report Re: Amount of Restitution Owed," to which Respondent did not respond.

## II. FACTS AND RULE VIOLATIONS

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on October 3, 1967, under attorney registration number 01063. He is thus subject to the jurisdiction of the Colorado Supreme Court and the Hearing Board in this disciplinary proceeding.[2]

### Summary Judgment Order

The Hearing Board briefly reviews the findings and conclusions in the PDJ's summary judgment order.

Respondent was a solo practitioner and the sole shareholder at the law firm of Kleinsmith & Associates, PC ("K&A"). K&A represented U.S. Bank in seventy-four real estate foreclosure actions in Idaho and Montana between 2012 and 2014. In the course of this representation, K&A retained First American Title Company, LLC, and First American

can Title of Montana, Inc. (jointly, "First American") to provide title services for these foreclosure cases. First American invoiced K&A a total of $57,338.00 for those services.

K&A billed U.S. Bank for First American's services. These "title services" were identified in K&A's invoices as "title commitment," with no specific reference to First American. U.S. Bank paid K&A for First American's services. K&A failed to pay First American, however. Instead, Respondent placed the funds provided by U.S. Bank into the firm's operating account and used those funds to pay other firm expenses.

First American obtained a judgment against K&A in Montana for its unpaid invoices in the amount of $55,782.00, and it domesticated the judgment in Colorado.[3] First American has been able to collect just $1,179.20 from Respondent through bank garnishments.

The PDJ concluded that Respondent violated Colo. RPC 1.15A(b), which provides that a lawyer shall promptly deliver to a third person any funds that the third person is entitled to receive. Respondent transgressed this rule by failing to promptly transmit to First American the funds he received from U.S. Bank—funds that were intended to pay for title services that First American had provided.

Next, the PDJ determined that Respondent's decision to exercise dominion over these funds, using them to pay other firm expenses, also amounted to knowing conversion under Colo. RPC 8.4(c), which proscribes conduct involving dishonesty. In that ruling, the PDJ noted that knowing conversion occurs when a lawyer takes another person's money that has been entrusted to the lawyer, knowing that it is the other person's money and knowing that the person has not authorized the taking.[4] The PDJ noted

2. See C.R.C.P. 251.1(b).

3. The judgment was against K&A, not Respondent himself, and the Montana court ruled that Respondent was not personally liable for the judgment.

4. People v. Varallo, 913 P.2d 1, 10-11 (Colo. 1996); see also People v. Lavenhar, 934 P.2d 1355, 1358 (Colo. 1997) (indicating that conversion of third-party funds, like conversion of client funds, amounts to a violation of the predecessor to Colo. RPC 8.4(c)).

that in several cases involving fact patterns similar to this case, the Colorado Supreme Court cases has held that an attorney's unauthorized use of funds to which another party is entitled amounts to knowing conversion under Colo. RPC 8.4(c). For example, in *People v. Finesilver*, the Colorado Supreme Court concluded that an attorney committed knowing conversion when he misappropriated "monies paid by clients of the law firm for services provided by [a title company] in the course of foreclosures handled by the law firm."[5]

The PDJ concluded that the elements of a knowing conversion were present in the instant case: U.S. Bank provided funds to Respondent for title services; Respondent knew that First American was entitled to that money for services it had performed in connection with the U.S. Bank representation; and Respondent knew that neither U.S. Bank nor First American had authorized him to use those funds for any purpose other than paying for title services.[6] In short, the PDJ found, Respondent had no valid basis for treating the funds as his own.

### Testimony and Evidence at the Disciplinary Hearing

Quinn Stufflebeam, the CEO of Title Financial Corporation—First American's parent company—testified at the disciplinary hearing about Respondent's conduct in this matter. According to Stufflebeam, when a lawyer requests title services associated with a foreclosure, First American provides a title guaranty at the outset of the foreclosure process.[7] First American fronts its own costs for the work, as well as an underwriter premium split, and generally receives payment from the lawyer at the end of the foreclosure.

When Respondent did not pay First American's bill, Stufflebeam said, First American hired outside counsel to seek recovery of the funds.[8] First American's in-house counsel and bookkeeper also spent time in this recovery effort. Stufflebeam estimates that his company's expenditures for outside counsel fees and additional in-house work totalled between $5,000.00 and $10,000.00. When asked his opinion about the appropriate sanction, Stufflebeam expressed some hope that First American could collect the money it is owed but also said that he does not want Respondent to have an opportunity to cause financial harm to others.

Shortly after the disciplinary hearing, Stufflebeam confirmed to the People that, taking into consideration receipt of one garnishment check in the amount of $1,179.20, Respondent currently owes First American $56,238.80.[9]

### III. SANCTIONS

 The American Bar Association *Standards for Imposing Lawyer Sanctions* ("ABA *Standards*")[10] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[11] When imposing a sanction after a finding of lawyer misconduct, a hearing board must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.

---

5. 826 P.2d 1256, 1256-57 (Colo. 1992); *see also In re Bilderback*, 971 P.2d 1061, 1063 (Colo. 1999); *People v. Lavenhar*, 934 P.2d at 1358; *Matter of Krause*, 676 A.2d 1340, 1342 (R.I. 1996) (ruling that a lawyer's failure to promptly pay funds owed to clients and third parties violated Rule 8.4(c)).

6. 913 P.2d at 10-11.

7. *See also* Ex. 1 (letter to the People dated September 20, 2016, from Phil E. DeAngeli, General Counsel for Title Financial Corporation).

8. *See also* Ex. 1 (stating that "First American has spent substantial money attempting to collect the money owed by [Respondent]").

9. "Status Report Re: Amount of Restitution Owed" at 1.

10. Found in ABA *Annotated Standards for Imposing Lawyer Sanctions* (2015).

11. *See In re Roose*, 69 P.3d 43, 46-47 (Colo. 2003).

## ABA *Standard* 3.0—Duty, Mental State, and Injury

■ *Duty*: Respondent violated his duties to the public by failing to maintain his personal integrity and refusing to pay for services rendered to him.[12]

*Mental State*: In his order granting summary judgment, the PDJ concluded that Respondent acted with a knowing state of mind. The PDJ's order, however, does not preclude the Hearing Board from finding that Respondent acted not only knowingly but intentionally, and we do so here.[13] Whereas knowledge is the conscious awareness of the nature of the conduct but without the conscious objective or purpose to accomplish a particular result, intent is defined as the conscious objective or purpose to accomplish a particular result.[14] The fact that Respondent used the funds from U.S. Bank to pay his own firm's expenses strongly supports the inference that Respondent's conversion was intentional. So does the fact that a judgment was entered against Respondent's firm yet he still failed to pay the funds he owed.

*Injury*: Respondent caused First American substantial financial injury by depriving the company of more than $55,000.00 that it was owed and by forcing the company to allocate resources to the collection effort. In turn, judicial resources were consumed in that collection proceeding. Respondent's conversion also undermined public confidence in the bar because the public expects that lawyers will turn over funds to their rightful owners.

## ABA *Standards* 4.0-7.0—Presumptive Sanction

The presumptive sanction in this case is established by ABA *Standard* 5.11(b), which states that disbarment is generally warranted when a lawyer engages in intentional but non-criminal conduct involving dishonesty that seriously adversely reflects on his or her fitness to practice law.[15] We conclude that Respondent's conduct in this case does seriously adversely reflect on his fitness as a lawyer because he acted dishonestly, breaching the trust a third party had placed in him to pay for services rendered.[16]

## ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances include any considerations that may justify an increase in the degree of the sanction to be imposed, while mitigating circumstances include any factors that may warrant a reduction in the severity of the sanction.[17] Respondent has not presented evidence of mitigating factors, nor is the Hearing Board aware of a basis for applying any such factors. We do consider the following six factors in aggravation:

*Prior Disciplinary Offenses—9.22(a)*: In January 2013, the PDJ publicly censured Respondent in accordance with a stipulation filed by the People and Respondent.[18] This sanction was premised on a disciplinary order entered in Arizona in 2012.[19] Based on a stipulation filed in that matter, the Presiding

---

**12.** *See* ABA *Standard* 5.0.

**13.** Although the People did not assert in their complaint or during the hearing that Respondent acted intentionally, the Hearing Board is aware of no legal requirement that the People do so. Rather, the ABA *Standards* and Colorado Supreme Court case law direct the Hearing Board to make its own independent analysis of Respondent's mental state.

**14.** ABA *Standards* § IV, Definitions.

**15.** The Hearing Board notes that the People urged application of ABA *Standard* 4.11, which provides that disbarment is generally appropriate when a lawyer knowingly converts client property and causes the client injury or potential injury. Because this standard specifically applies to conversion of funds belonging to clients, rather than third parties, and because the Hearing Board is

aware of just one Colorado Supreme Court case applying ABA *Standard* 4.11 to misappropriation of third-party funds, *see People v. Motsenbocker*, 926 P.2d 576, 577 (Colo. 1996), the Hearing Board finds application of ABA *Standard* 5.11 more fitting here. Under application of either standard, however, the result in this case would be the same.

**16.** *See, e.g., In re Thompson*, 991 P.2d 820, 823 (Colo. 1999) (disbarring an attorney who failed to turn over to his law firm funds he owed the firm); Colo. RPC 8.4 cmt. 2 (noting that offenses involving dishonesty or breach of trust indicate a lack of fitness to practice law).

**17.** *See* ABA *Standards* 9.21 & 9.31.

**18.** Ex. 2.

**19.** Ex. 2.

Disciplinary Judge of the Supreme Court of Arizona ruled that Respondent filed improper arbitration certificates in nine separate court matters; failed to appear for two hearings in Wisconsin and then billed the client for corrective motions to remedy his failures to appear; made errors in preparing a real estate notice of sale in a Florida matter; and failed to reasonably communicate with a client before filing a motion to withdraw from representation.[20] This conduct violated seven of Arizona's rules of conduct.[21] Respondent's prior discipline is relatively recent and involved multiple types of misconduct, and we conclude that this discipline warrants consideration in aggravation here.[22]

*Dishonest or Selfish Motive—9.22(b):* Respondent elected to keep for his own benefit funds that rightfully belonged to a third party. By definition, Respondent's conduct was selfish.

*Pattern of Misconduct—9.22(c):* Respondent failed to pay First American for services rendered in seventy-four separate foreclosure matters over a multi-year period.

*Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g):* In multiple filings throughout this proceeding, Respondent has steadfastly refused to acknowledge that he did anything wrong by keeping the funds owed to First American. He has persisted in this viewpoint even after he was immediately suspended and after the PDJ referred him to Colorado Supreme Court case law that clearly indicates his conduct amounts to knowing conversion. Because Respondent has insisted on closing his eyes to applicable law, we apply this factor in aggravation.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent has practiced law for almost a half century. He should have been well acquainted with the laws governing handling of third-party funds.

*Indifference to Making Restitution—9.22(j):* Save for one small garnishment, which counts neither as aggravation nor as mitigation under ABA *Standard* 9.4(a), Respondent has failed to repay the funds he owes to First American.

## Analysis Under ABA *Standards* and Case Law

■ The Colorado Supreme Court has directed the Hearing Board to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors.[23] We are mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[24] Though prior cases are helpful by way of analogy, hearing boards must determine the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

Time and again, the Colorado Supreme Court has held that knowing or intentional misappropriation of funds from clients or other parties warrants disbarment, except where substantial mitigating factors are present.[25] Respondent has presented no mitigating evidence that would justify departure

20. Ex. 2.

21. Ex. 2. The Third Judicial District Court in and for Salt Lake County, State of Utah, then publicly reprimanded Respondent as an order of reciprocal discipline based on the sanction issued in Arizona. Ex. 2.

22. *See In re Jones,* 326 Or. 195, 951 P.2d 149, 152 (1997).

23. *See In re Attorney F.,* 285 P.3d 322, 327 (Colo. 2012); *In re Fischer,* 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

24. *In re Attorney F.,* 285 P.3d at 327 (quoting *In re Rosen,* 198 P.3d 116, 121 (Colo. 2008)).

25. *See, e.g., Lavenhar,* 934 P.2d at 1359 (imposing disbarment for multiple instances of misconduct, the most serious of which was knowing conversion of third-party funds, and stating that "[w]e have repeatedly held that a lawyer's knowing misappropriation of funds, whether belonging to a client or third party, warrants disbarment except in the presence of extraordinary factors of mitigation"); *Motsenbocker,* 926 P.2d at 577 (disbarring an attorney who knowingly misappropriated bar association funds); *cf. People v. Lujan,* 890 P.2d 109, 110-12 (Colo. 1995) (stating that disbarment was the presumptive sanction for a lawyer's theft from her law firm but electing to instead suspend the lawyer for three years in light of overwhelming mitigating evidence).

from the presumptive sanction and from guiding Colorado case law. The Hearing Board thus concludes that Respondent should be disbarred.

## IV. CONCLUSION

The Rules of Professional Conduct impose upon attorneys special duties to safeguard funds and to promptly turn those funds over to their rightful owners. Respondent failed in his duties, electing to keep tens of thousands of dollars for his own benefit rather than remitting them to the title company that had performed extensive work at his direction. The presumptive sanction of disbarment is warranted for this misconduct.

## V. ORDER

The Hearing Board therefore **ORDERS**:

1. **PHILIP M. KLEINSMITH**, attorney registration number 01063, is **DISBARRED FROM THE PRACTICE OF LAW**. The disbarment will take effect upon issuance of an "Order and Notice of Disbarment." [26]

2. Respondent **SHALL** pay **RESTITUTION** in the amount of $56,238.80 to First American Title Company of Montana on or before **January 13, 2017**.[27] Interest shall accrue from today's date at the rate of eight percent per annum, compounded annually.

3. To the extent applicable, Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

4. Within fourteen days of issuance of the "Order and Notice of Disbarment," Respondent **SHALL** comply with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the PDJ setting forth pending matters and attesting, *inter alia*, to notification of

clients and other jurisdictions where the attorney is licensed.

5. The parties **MUST** file any posthearing motion or application for stay pending appeal with the Hearing Board **on or before December 9, 2016**. Any response thereto **MUST** be filed within seven days.

6. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** submit a statement of costs **on or before December 2, 2016**. Any response thereto **MUST** be filed within seven days.

*Original Signature on File*
 MARCY G. GLENN
 HEARING BOARD MEMBER

*Original Signature on File*
 JAMES X. QUINN
 HEARING BOARD MEMBER

---

26. In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of

C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

27. *See* "Status Report Re: Amount of Restitution Owed" at 1.